[Civ. No. 8566. Third Dist. May 25, 1955.]

HAROLD R. GREEN, Respondent, v. W. C. ANTOINE, Appellant.

Stephen P. Galvin for Appellant.

Blewett, Blewett, Macey & Garretson and Richard E. Macey for Respondent.

VAN DYKE, P. J.—Respondent Green was plaintiff in the trial court. His occupation was that of farmer and contractor. After a demonstration, during which representations were

made to him, he purchased from appellant Antoine an agricultural machine known as a rotary tiller. It was designed by its manufacturer, and was purchased by respondent from appellant, for the purpose of pulverizing soil to a point suitable for use as seed beds in the growth of row crops. The machine was pulled by a tractor but had its own motor that operated the soil pulverizing equipment. Respondent made a down payment of $2,206.90 and agreed to pay a total purchase price of $5,140, plus a financing charge. Respondent put the machine into service and it proved too weak for the strains met. It broke down on four occasions during a total period of use approximating 300 hours. Each time the machine broke, appellant, on being informed of the breakdown, repaired the machine. The breaks were in the rear end assembly. About two years and four or five months before this action was begun respondent returned the machine to appellant and it was taken to the manufacturer whose field representative had so recommended, for the purpose of again repairing it and this time so rebuilding the faulty parts as to eradicate the weakness which was thought to be causing the breakdowns. Respondent borrowed a larger machine of the same type from the appellant and did some further work until the season of the year for such work was over. Respondent, appellant and the factory representative met and discussed the situation as to the machine being purchased. Respondent requested that a heavier machine be delivered to him and that the down payment he had made on the faulty machine be credited to him on the substitute machine, but this proposal was rejected. The manufacturer returned the machine to appellant, but it had not been rebuilt in any way, having merely had a substitution of new parts for the broken parts. Some time thereafter respondent learned that the original machine had been returned by the manufacturer to appellant. He went to see appellant, who told him the machine had not been rebuilt. Appellant told respondent that he was going to fix the machine himself. However, respondent heard nothing further from him and made no further payments. Under the agreement the balance was to be paid December 11, 1950, and when it fell due the appellant himself made the payment to the bank, which had financed appellant's own first purchase of the machine from the manufacturer. Appellant made no demand on respondent to make the payment and thereafter started using the machine himself in his own operations. There appears to have been no further communication

between the parties and the situation remained in that state until in September of 1952 this action was begun by respondent. The complaint was in the form of a common count for money had and received and the theory of respondent therein, as became apparent at the trial, was that there had been a complete failure of consideration and that the parties had mutually rescinded the contract of sale. The trial court found as follows: That respondent bought the machine on March 10, 1951 (this date was in fact March 10, 1950, it being apparent from the entire record that stating the year as 1951 was a clerical error): that at that time appellant did not himself have complete title to the machine, but that the title rested in the bank that financed his purchase of it from the manufacturer; that respondent made the down payment above referred to and agreed to pay the balance within 30 days or if not then paid to pay the financing bank the amount due on appellant's contract with the bank on the following 10th of December; that respondent upon such payment was to receive title; that appellant had guaranteed the machine would perform and that this guarantee was that it would perform satisfactorily on unplowed ground; that the machine did not work satisfactorily on unplowed ground; that it was unable to perform the work for which it was purchased; that respondent returned the machine to appellant in April of 1951 and that appellant then agreed to make certain changes in the machine but did not do so; that appellant forwarded the machine to a repair shop and it was returned to him in June of 1951 without any changes having been made; that respondent thereafter was informed that the machine had been returned to appellant without the changes agreed upon having been made; that in December of 1950 appellant made a payment to the financing bank on his conditional sales contract with it and thereafter used the machine for his own personal use; that appellant did not return to plaintiff the down payment he had received; that its return was demanded and that when demanded appellant told respondent he would think it over, but took no further action until he made the partial payment to the financing bank. As conclusions of law, the court found that the foregoing facts worked a total failure of consideration for the contract between respondent and appellant; that respondent had made an offer of rescission to appellant and that appellant had accepted the same in December of 1951 and that respondent was entitled to judgment for the amount he had

paid with interest from the date of rescission. Judgment was thereafter entered in conformity to the findings and conclusions and it is from that judgment appellant takes this appeal.

Appellant in his answer pleaded the statute of limitations found in section 339, subdivision 1, of the Code of Civil Procedure, and here contends that this defense was made out and that he was, therefore, entitled to judgment in his favor. He argues that, assuming the facts warranted a conclusion that rescission had taken place, it could have taken place no later than July 11, 1950, when the machine having been returned from the manufacturer to appellant, the respondent, on being informed it was there, refused to accept it. This date being more than two years before the action was begun, appellant concludes that as a matter of law the defense of limitation was made out. However, this contention fails to give effect to the testimony that when, after breaking down four times in normal use, the machine was returned to appellant, the parties then reached an understanding that the manufacturer would take it and rebuild it in such manner as to correct the weaknesses which apparently were causing the breakdowns and which apparently also were a matter of faulty design. There is testimony directly to the point that the machine was to be remedied and not merely repaired and left with the same inherent weaknesses that were causing the trouble. It is also of record that the manufacturer did not rebuild the machine but, on the contrary, repaired it and sent it back to the appellant with no better capacity to withstand the normal strains of its operations than it had had before. ▉ The last discussion between the parties to the contract occurred thereafter and there is evidence that, while respondent refused to accept the machine in its repaired condition, he was told by appellant that he, appellant, would himself rebuild the machine and correct its weaknesses. The record discloses that the entire matter between the two men was left in that status and it was not until the following December and at a date within two years of the filing of the action that appellant, who had the machine all this time, began using it himself, made the payments required by his financing contract with the bank, and thereafter, while retaining the money respondent had paid him, held no further communications with and made no demands of any sort upon respondent. These things having transpired, the trial court was warranted in finding, as it did, that by reason of its un-

fitness for the purposes for which respondent purchased it, by reason of its return to the seller and by reason of his retention of it and use of it for his own purposes, the consideration of the contract had totally failed, giving rise to a cause of action in respondent based upon the implied promise of repayment which arose from the failure of consideration. It has often been held that where the failure of consideration is total it is not necessary that a formal rescission be made before bringing suit. In *Richter* v. *Union Land & Stock Co.,* 129 Cal. 367, 373 [62 P. 39], it is said:

"Nor, where the failure of the consideration is total— which implies, of course, that nothing of value has been received under the contract by the party seeking to rescind— is it necessary that a formal rescission be made before bringing suit. In such cases a suit may always be maintained for the recovery of the consideration paid. . . .

". . . [W]here there has been a total failure of consideration as to one party, the law implies a promise on the part of the other to repay and what has been received by him under the contract; . . .

". . . 'In either case [that is, suit for the consideration without formal rescission or in case of rescission, both based, however, upon total failure of consideration] the contract is rendered incapable of enforcement, the judgment being a bar to any future action.' " (See also *Morrell* v. *Clark,* 106 Cal.App.2d 198, 202 [234 P.2d 774].)

Respondent rightfully pleaded his cause as a common count for money had and received. The trial court was warranted in finding a total failure of consideration from the facts before it and therefore properly concluded that respondent had made out his case and that appellant was bound under his implied promise to return the money he had received and in entering judgment for that sum. The trial court was warranted in fixing the date of total failure of consideration as being that time when appellant exercised ownership and complete dominion over the machine and by putting it to his personal use rendered himself incapable of performing his promise to rebuild the weakened parts and return the machine so reconditioned to respondent. As before stated, respondent testified that when he returned the machine to appellant he thereafter had nothing further to do with it and then "abandoned" the entire transaction. Appellant urges that this testimony compelled the court to fix the date of failure of

consideration as of the date respondent returned the machine. This argument, however, places a construction upon this testimony of appellant which the court was not bound to adopt, for respondent also testified concerning the undertaking of appellant to rebuild the weakened parts of the machine himself and stated that had the machine been put in fit condition to do its work he would have gone on with the contract.

Appellant makes further contentions. He states them as follows: ''The judgment is against the law because the court made no findings on any of the following material issues raised by the answer which were that: (a) The alleged causes of action were barred by the statute of limitations; (b) Plaintiff wilfully breached and repudiated his agreement, and abandoned the contract; (c) The value of use of the equipment during the period plaintiff used it.'' This is a challenge based upon sufficiency of the findings made and upon the failure to find on material issues. ■ It is well settled that when considering such a challenge all legitimate and reasonable inferences must be indulged to support the judgment of the trial court. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Baker* v. *Curtis*, 105 Cal.App.2d 663 [234 P.2d 153].) ■ Findings must be liberally construed to support the judgment. (*Johndrow* v. *Thomas*, 31 Cal.2d 202 [187 P.2d 681].) ■ ''A judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made.'' (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593].) ■ Applying these rules to the appellant's challenge of the findings, it is apparent from what we have already said that the trial court, having justifiably found a total failure of consideration arising by reason of failure of the machine and appellant's actions in December of 1950, was not required to make an express finding that the cause of action then arising was not barred since it then appeared from the record that the complaint was filed within two years from the time the failure of consideration occurred. The judgment, therefore, cannot be reversed for failure to make an express finding upon the plea of the statute. (*Hill* v. *Donnelly*, 56 Cal.App.2d 387, 392 [132 P.2d 867].) ■ What we have just said concerning the matter of findings upon the statute of limitations applies equally to assignment (b) *supra*, for it appears from the findings made, which are in turn

supported by the evidence, that respondent never breached his agreement since no further performance on his part was due under the contract until after the time fixed by the court as marking the total failure of consideration, and since it equally appears that he did not himself repudiate the agreement nor abandon the same. This latter is shown, as we have said above, by his testimony that he would have taken the machine had appellant made it fit for his purposes by strengthening the weak parts.

We will now discuss assignment (c), above, that is, failure of the court to find upon appellant's plea that there had been no failure of consideration since respondent had used the machine for a total of about 300 hours at a reasonable use value, as appellant alleged, of $10 per hour. Treating this as a special plea, the record discloses direct testimony by respondent that because of the frequent breakdowns the use he had from the machine was of no value whatever and that in fact he suffered a loss in attempting to use the machine. This evidence in connection with the court's finding of the ultimate fact of failure of consideration sufficiently disposes of this attack upon the findings.

As we noted above, the court found that the agreement between the parties was made on March 10, 1951; that the machine was returned for the last time in April of 1951 and that the manufacturer returned it to the appellant in June of 1951. It is quite apparent from the record, as we have said, that these dates should all have been fixed in 1950 and that the failure to do so is a mere clerical misprision. Respondent asks us here to correct this error by amending the findings to show that these events occurred in 1950. That we have power to do so in a proper case is well settled. (*Johndrow* v. *Thomas, supra,* p. 207; Code Civ. Proc., § 956a; rule 23(a), Rules on Appeal.) Said the Supreme Court in the case cited: "[T]his court has power where a jury trial is not a matter of right or has been waived, to correct and amend findings which are conflicting as the result of inadvertence in order to affirm the judgment."

For these reasons the Findings are corrected in the following particulars: In Paragraphs I, III, VII, VIII and XIII the date "1951" is changed to "1950" wherever appearing. The following changes are made in the Conclusions of Law: In Paragraph II the date "December of 1951" is changed to read "December of 1950"; in Paragraph III the date "10th

day of December, 1951'' is changed to read ''10th day of December, 1950.''

We think nothing further need be said concerning contentions advanced by appellant and not herein specifically discussed.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.