[Civ. No. 23773. Second Dist., Div. Two. Aug. 26, 1959.]

IRWIN DUZÉ, Appellant, v. ACE TRACTOR AND EQUIP-MENT COMPANY, INC. (a Corporation), et al., Respondents.

Joseph M. Wapner for Appellant.

William M. Anderson for Respondents.

FOX, P. J.—Plaintiff appeals from a judgment in favor of defendants in an action for damages for alleged conversion of personal property.

Generally, the allegations of the complaint are that the defendants entered into an oral agreement whereby plaintiff was permitted to store, rent free, certain personal property consisting of tractors and field equipment, on defendants' premises, and that specified property was converted by the defendants. The defendants answered, and by way of counter-claim alleged that they supplied materials and services in connection with the maintenance, safety and upkeep of the equipment, of the reasonable value of $458.99; expended labor

to place and locate the equipment, claiming $197 for such services; sold and rented equipment for the sum of $1,800, on which, under defendants' version of the contract, they were entitled to a 20 per cent commission; and defendants also claimed a 20 per cent commission from the sale of a Caterpillar 12 belonging to the plaintiff.

The trial court made findings of fact and conclusions of law in which it upheld defendants' contention that plaintiff was to pay them the reasonable cost of labor in connection with the maintenance of the equipment; the reasonable cost of locating and placing the same on defendants' premises; that plaintiff agreed to pay defendants a 20 per cent commission on the sale or rental of certain equipment; that the defendants were the procuring cause of the sale of the Caterpillar 12 for $9,100; and that plaintiff agreed to pay defendants a 10 per cent commission on this sale.

The court found that defendants received $1,800 from the sale and rental of plaintiff's property. Against this amount, however, the following were allowed as offsets: (1) $360 (20% commission on above $1,800), (2) $910 (10% commission from sale of the Caterpillar 12), and (3) $655.99 (materials and services). The offsets amount to $1,925.99, which exceeds by $125.99 the amount found owing to the plaintiff by defendants. Judgment was given defendants in this latter amount. It is from this judgment that plaintiff has appealed.

As a basis for reversal, plaintiff argues that the findings and judgment are not supported by the evidence.

■ "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Grainger* v. *Antoyan*, 48 Cal.2d 805, 807 [313 P.2d 848]; *Martin School of Aviation* v. *Bank of America*, 48 Cal.2d 689, 692 [312 P.2d 251].)

Initially, plaintiff argues there is no evidence establishing that defendants were the procuring cause of the sale of the Caterpillar, or that plaintiff agreed to a 10 per cent commission thereon.

Mr. Brunell, a defendant and president of the defendant corporation, testified that they were to receive a 20 per cent commission upon the sale or lease of the Caterpillar. Mr. Palmer stated the amount to be 10 per cent. Mr. Duzé, on the other hand, contended there was no agreement to pay

any commission. The trial court resolved this conflict in the evidence and accepted Palmer's testimony as true. The task of resolving conflicts in the evidence and determining the credibility of witnesses rests, of course, with the trier of fact, and not with appellate tribunals.

 As to the question of whether defendants were the procuring cause of the ultimate sale of the Caterpillar, the evidence is again conflicting. Viewing the evidence most favorably to the defendants, it appears from the record that one Jesse Anderson went to defendants' premises and saw the Caterpillar. He spoke to Thomas Palmer (a joint venturer with defendant corporation) about renting it with an option to buy. Plaintiff was then notified and given Anderson's telephone number. Subsequently, plaintiff and Anderson met on defendants' property and thereafter, on September 3, 1954, entered into a written lease for 14 months at $650 per month. Anderson was late with the second rental payment. Plaintiff went to Indio, where he believed Anderson was using the equipment, in an attempt to collect the past due rent. He contacted the Massey Rock Company and discovered Anderson was working with or for them. Plaintiff collected the rent and, according to his testimony, Anderson released all his interests in the machinery and plaintiff then leased it to Massey Rock, on November 3, 1954, for a period of 12 months at the same rental which Anderson had previously paid. Anderson relinquished his interests by making the following notations on his copy of the original lease: "This contract cancelled as of Nov. 3-54 and turned equipment over to Massey Rock and Sand Co., Certified Contractor, Inc. by J. G. Anderson."

Brunell testified that prior to the time plaintiff and Anderson entered into the original lease, Anderson brought Mr. William Carter, a partner in Massey Rock, to defendants' property to approve the deal. On cross-examination, Brunell testified as follows:

"Q. And Mr. Anderson talked to Mr. Palmer who was your joint venture associate? A. That is right.

"Q. And the two of them, then, got together with Mr. Duzé; is that correct? A. Yes.

"Q. Did Mr. Palmer—I mean did Mr. Carter, Senior of Massey Rock agree to be bound by this regular contract? A. Yes, he O.K.'d it. Mr. Anderson——

"Q. Did he say, 'Bill me'? A. No, he said 'You go ahead

with the deal. You can work it out, and I will employ the machinery. I will go—we will go ahead with it.' ''

From the above testimony it appears that Massey Rock was initially brought into the picture by or through the efforts of defendants in securing Anderson as a lessee and that, thereafter, Massey Company, in effect, merely took over the original lease from Anderson, even though a new lease was executed. This state of facts justifies a determination that defendants were the procuring cause of the $9,100 paid to the plaintiff.[1]

Plaintiff next attacks Finding Number VII, which relates to the sale or rental of equipment other than the Caterpillar. In this finding, the court stated that ''defendant corporation was the procuring cause of the sale or rental of such equipment as plaintiff consigned to defendant corporation in the gross amount of $1,800.00, and by reason thereof plaintiff became indebted to defendant corporation, pursuant to the terms of the agreement, in a sum equal to 20% thereof, or $360.00.''

This finding is in no respect inconsistent with Finding Number VI, relating to the Caterpillar, which stated defendants were only entitled to a 10 per cent commission. Finding Number VI expressly states that the reduction of commission related only to the Caterpillar and did not affect the rest of the equipment.

Finding Number VII is unquestionably supported by the evidence. There is ample testimony that defendants were to receive a 20 per cent commission on the sale or rental of this equipment. In this regard, Brunell testified as follows on cross-examination:

''Q. You were to receive a commission of twenty per cent for the sale of the motor grader? A. Anything we sold.

''Q. And what commission were you to receive if it was rented? A. The same amount.

''Q. Twenty per cent? A. Yes.''

As previously noted, the testimony was conflicting, but this was for the trial court to resolve. As stated in *Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384]: ''All of the evidence most favorable to the respondent must be accepted as

---

[1] In the oral proceeding before this court, defendants argued that the 10 per cent commission was due once the lease with Anderson was executed, irrespective of the fact that Anderson subsequently defaulted and Massey Rock took over the equipment. Defendants' brief on appeal, however, also goes upon the theory which is reflected in the findings of fact and apparently adopted by the trial court, viz: that defendants earned their commission as a result of both the Anderson and Massey transactions.

true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact.''

Mr. Tinley, defendants' bookkeeper, testified that a forklift was sold for $1,400, and rentals received on others in the amount of $400. This totals $1,800, and 20 per cent thereof is $360. This evidence fully supports Finding Number VII.

Plaintiff states the record does not contain evidence to support the figures contained in Finding Number VIII, which reads: ''During the period that said equipment was in the possession of the defendant corporation, said defendant caused materials, parts, labor and services to be supplied to, or rendered upon, said equipment of the reasonable and necessary value of $458.99, and, in addition, expended labor for the purpose of moving, locating, hauling and delivering such equipment of the reasonable value of $197.00.''

With respect to the furnishing of labor and materials, Ralph Wigert, who had worked for defendants, testified that he steam cleaned, charged batteries, cleaned carburetors and gasoline tanks, and changed starters on plaintiff's forklifts. Brunell testified that there was a $10 charge per forklift to clean them. Tinley testified to the general repair and maintenance work as follows:

''. . . [T]he batteries ran down on them [forklifts] and gas evaporated out of them, carburetors had to be cleaned and in order to maintain these in a saleable condition, why we had to charge the batteries and fix the starters. And even the ones that we did sell, we had to go about three days later or a week later and take the starter off and take it up to Graham Electric Company and have it repaired and take it back and put it on and the generator also.''

Tinley further testified to a charge of about $200 for loading and unloading plaintiff's equipment and junk. Finally, he stated that defendants had expended $1,015.99 (including $360 commission) on the equipment. $1,015.99 less the $360 commission amounts to a maintenance-repair-loading charge of $655.99, the precise amount found by the trial court. There was testimony that the above labor and materials were furnished and that plaintiff was notified that defendants claimed $655.99 therefor (plus $360 commission). Plaintiff does not suggest that the amount claimed was unreasonable and the trial court obviously determined that it was reasonable. Plaintiff apparently objects to the court's relegating $197 to hauling expenses and $458.99 to labor and materials. In

their counterclaim defendants divided the charges in the same manner as noted in the findings. Tinley's testimony as to a charge of "possibly $200 for the loading and unloading" may well have been taken by the trial court to mean no more than the $197 set forth in the counterclaim. So considered, the record contains evidence of a claim for $655.99, which the court found reasonable, and of said claim, $197 was allocated to hauling expenses, leaving a balance of $458.99, to be applied to the other expenditures for labor and materials which defendants claimed were made, and which the trial court believed were reasonable. ██ It must be remembered that "findings of fact must be liberally construed to support the judgment." (*Johndrow* v. *Thomas,* 31 Cal.2d 202, 207 [187 P.2d 681]; *Estate of Moore,* 143 Cal.App.2d 64, 78 [300 P.2d 110]; *Green* v. *Antoine,* 133 Cal.App.2d 269, 275 [284 P.2d 76].)

Finally, plaintiff argues that Finding Number IX "falls of its own weight."[2] This finding is fully supported by the evidence, and in view of what has been said relating to the other findings previously discussed, we believe it unnecessary to comment further upon this finding.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

---

[2]Finding Number IX reads: "Defendant corporation has received, in consideration for the sale and rental of plaintiff's equipment, a total sum of $1,800.00, and is entitled to offset and debit against such sum commissions earned amounting to $910.00 on account of the Caterpillar 12 as found in paragraph VI hereof, commissions earned amounting to $360.00 as found in paragraph VII hereof, and the value of materials and services supplied as found in paragraph VIII hereof, amounting to $655.99; or a total of $1,925.99."