389 P.2d 739

Howard B. ERICKSEN, Plaintiff and Appellant,

v.

Robert L. POULSEN, Defendant and Respondent.

No. 9973.

Supreme Court of Utah.

March 2, 1964.

George W. Preston, George D. Preston, Logan, for appellant.

Walter G. Mann, Reed W. Hadfield, Brigham City, for respondent.

CROCKETT, Justice:

Plaintiff sued to recover for breach of warranty and other damages alleging that a stallion he purchased from the defendant for breeding purposes proved to be sterile. The trial court indicated that it believed the plaintiff's evidence as to the horse's sterility, but would deny recovery on the ground that plaintiff "delayed too long after ascertaining that Applejack could not impregnate the mares before he attempted to rescind."

On May 29, 1961, plaintiff Ericksen bought the horse, Applejack, a 21-month-old Ponies of America stallion, for $1,500.

Both parties understood that the horse was to be used for breeding purposes. Defendant, Dr. Robert L. Poulsen, a veterinarian, advised plaintiff that the horse had been used successfully for that purpose and that if he was used not more than twice a week he would be all right. The horse was taken to Montana and used as directed but the mares served did not "settle" but returned to estrus. The trial court found that the horse was, "bred to several mares, but no mares bred by said stallion * * * became in foal."

Pursuant to motions of both parties to amend the findings, the court added a finding that he was "unable to make any finding as to whether said animal was in fact infertile at the *time* of the sale"; but also reiterated the finding that:

"That the P.O.A. stallion called Applejack, after having been transported from Tremonton, Utah to Hamilton, Montana was incapable of getting offspring and was unfit for the purpose for which it was purchased by the plaintiff."

The evidence leaves no doubt as to the correctness of the latter finding. To be concerned with whether the horse was sterile at the *instant* of sale or not would be hyper-technical. It was the understanding and intent of the parties that the horse was to be hauled to Montana and used on plaintiff's ranch. There is no indication of

any untoward incident occurring, or of any mistreatment of the horse, which might have affected his fertility. On the contrary the evidence is that the plaintiff was careful and concerned for the horse's welfare; that he gave him good care and followed the directions of defendant, Dr. Poulsen, and of his own veterinarian, Dr. J. W. Jackson, as to treatment of the horse; that after his fertility first became suspect, in accordance with advice, he rested the horse, first for a month, then "until fall"; and that although a number of attempts at breeding were made, they were all unsuccessful. In the fall the horse contracted distemper, apparently recovered, and then in December, 1961, died from causes unrelated to his sterility. There was some correspondence between the parties about a possible adjustment of the difficulty, but it resulted in an impasse, and this action was commenced in December, 1962.

 The defendant urges that he sold the horse in good faith believing him to be fertile. There appears no reason to doubt that he acted in good faith in the matter. In all likelihood this was also true of the horse. But this is not a case of fraud, which requires wilful wrong or failure, but of breach of warranty, in which good faith does not suffice. Regardless of good or bad faith, the fact remains that the only reasonable conclusion to be drawn from the evidence in this record is that this horse proved to be incapable of serving the purpose intended by the parties. There was thus a breach of warranty which is ground for rescission and return of the purchase price. See Eden v. Vloedman, 202 Okl. 462, 214 P.2d 930.

██ We turn our attention to the question whether the plaintiff delayed so long in seeking redress that he should be denied recovery. Defendant cites and relies on the provision of the sales act (Sec. 60-5-7(3) U.C.A.1953) that a buyer "cannot rescind * * * if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or offer to return the goods to the seller in substantially as good condition as they were * * *." In considering this contention it should be borne in mind that plaintiff had been in communication with Dr. Poulsen during the summer of 1961 as to the infertility of the horse, and the latter had advised him to be patient and give the horse a little maturity, which the plaintiff had agreed to do, and had followed advice in first resting him for a month, then waited until fall before trying the horse again; that defendant had sent another stallion, Little Earthquake, up to Montana to assist in plaintiff's breeding program, which encouraged the plaintiff to believe that the defendant was going to do what was right in the premises. It is plain that up until the horse's death in December both parties

were hoping he would recover and fulfill their expectations. After his death it would have been utter folly to expect plaintiff to proffer his return. The law does not require any such useless thing.

On January 15, 1962, plaintiff wrote Dr. Poulsen recounting the unfortunate history and requesting that some adjustment be made. On February 2, 1962, the latter responded with a letter closing:

> "I also desire to have this matter settled in a friendly manner; but frankly, I am at a loss to understand what you expect."

In February, 1962, and again in March, plaintiff wrote suggesting that "you replace Applejack with a horse of like type and the quality."

■ It appears to us that this was a fair request which should have been complied with, and we cannot see that under the circumstances shown the plaintiff is chargeable with any unreasonable delay in requesting the redress to which he was entitled, or in the bringing of this suit. This is particularly so because there is no indication that such delay as there was put the defendant at any disadvantage. See Mawhinney v. Jensen, 120 Utah 142, 232 P.2d 769.

The plaintiff should have judgment for the return of his $1,500, plus interest thereon from February 2, 1962, the time of his demand. The judgment is corrected accordingly. Costs to plaintiff (appellant).

HENRIOD, C. J., and McDONOUGH, CALLISTER and WADE, JJ., concur.