370 F.2d 73
 WAGNER TRACTOR, INC., and FWD Wagner, Inc., Defendants-Appellants,
v.
W. E. SHIELDS, Trustee in Bankruptcy for Frost Machinery
Company, Ltd., Plaintiff-Appellee.
W. E. SHIELDS, Trustee in Bankruptcy for Frost Machinery
Company, Ltd., Plaintiff-Appellant,
v.
WAGNER TRACTOR, INC., and FWD Wagner, Inc., Defendants-Appellees.
 Nos. 20745, 20758.
 United States Court of Appeals Ninth Circuit.
 Dec. 15, 1966.
 
 Marshall C. Cheney, Jr., John P. Ronchetto, of Mize, Kriesien, Fewless & Cheney, Portland, Or., for appellants.
 William D. Campbell, of Freed & Campbell, Portland, Or., Walter C. Newman, Q.C., Winnipeg, Manitoba, Canada, for appellee.
 Before CHAMBERS, BARNES and DUNIWAY, Circuit Judges.
 BARNES, Circuit Judge:
 
 
 1
 This is a consolidation of two appeals from the United States District Court for the District of Oregon. The trial court's jurisdiction was based upon 28 U.S.C. 1332. This court has jurisdiction under 28 U.S.C. 1291.
 
 
 2
 Wagner Tractor, Inc. (hereinafter 'Wagner') is a manufacturer of construction and farm machinery. Shields is the trustee in bankruptcy for Frost Machinery Company, Ltd. (hereinafter 'Frost'). Frost was a dealer in Wagner products.
 
 
 3
 In April of 1959, Wagner sold a Wagner Tractor Model IND-14, Serial No. 2019, to Frost, f.o.b. Portland, Oregon. Delivery was taken by Albert Ferec, a retail customer of Frost, who took it to St. Rose DuLac, Manitoba, to be used in his road construction business. The machine did not perform properly. It was agreed that the machine, No. 2019, would be returned to Frost and Ferec would purchase a different machine.
 
 
 4
 In May of 1959, Frost purchased from Wagner a Wagner Tractor Model IND-14A, Serial No. 2033, f.o.b. Portland, Oregon. Delivery was again taken by Mr. Ferec as Frost's retail customer. Mr. Ferec used the machine in his road construction business, with minor repairs being made to the tractor. In August of 1959 a serious malfunction (after about 650 hours of work) necessitated certain major repairs which were done by Frost. Work with the machine continued until October when the weather prevented further work. In the spring of 1960, Ferec again used the No. 2033, but after only 12 hours of operation the transmission failed. Frost refused to repair it and Ferec returned the machine to Frost. Ferec was in default on his payments for the machine, but no demand for payment was made to him. There is no evidence that Ferec's contract with Frost was ever rescinded.
 
 
 5
 As to the first machine, No. 2019, a new engine was installed to provide more power. Frost paid the cost of installing the new engine as it had agreed. During 1960 it was leased on two occasions and, apparently, performed satisfactorily, the rentals being in excess of $5,000.
 
 
 6
 The dealership agreement between Frost and Wagner was terminated by Wagner according to its terms on August 7, 1959. Later, Frost became bankrupt, and the machines were repossessed and sold by the finance company, Industrial Acceptance Corporation.
 
 
 7
 On March 22, 1963, Frost, by its trustee in bankruptcy, filed suit against Wagner and its successor for breach of warranty. After trial, the court found that Wagner had breached its warranties as to each machine and awarded damages of $4,350.14 as to No. 2019 and $32,500.00 as to No. 2033. Wagner appeals from the judgment of breach of warranty and the amount of damages. Shields, as trustee for Frost, appeals the amount of damages contending they are inadequate.
 
 
 8
 As the court's jurisdiction was based on diversity of citizenship, the case is to be determined by the law of the state where the court sits, in this case Oregon. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See also, Byrd v. Blue Ridge Rural Elec. Co-op, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). The parties agree that Oregon law should be applied.
 
 I. Machine No. 2019
 
 9
 As to the first machine, No. 2019, Wagner contends that there was no warranty to breach. Beyond that question, however, Wagner claims that Frost suffered no injury with respect to No. 2019.
 
 
 10
 The elements of a cause of action for breach of warranty are: (1) a warranty; (2) breach of that warranty; (3) notice to the warrantor of the breach (Ore.Rev.Stats. 75.490);[1] and (4) damages proximately caused by the breach.
 
 
 11
 There was a warranty. There is evidence to sustain the trial court's finding that there was an implied warranty of fitness. Ore.Rev.Stats. 75.150 (1) provides:
 
 
 12
 'Where the buyer, expressly or by implication, makes known to the seller that particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.'
 
 
 13
 Ferec, the road builder, Sneva (Frost's salesman) and Ankerman (Wagner's Canadian representative) met together to discuss the equipment required by Ferec for his particular use in road building in that particular area of Canada. Ankerman specified the model which Ferec bought from Frost. (Exh. 70, p. 22, Exh. 71, pp. 15-16.) Through Ankerman, Wagner can be charged with knowing the use intended by Frost, that is, to sell it to Ferec for road construction. If it was not fit for road construction, it was also not fit to sell for that purpose. Wagner, knowing it was to be sold as road construction equipment in reliance upon Ankerman's judgment, warranted it as fit by the terms of Ore.Rev.Stats. 75.150(1).
 
 
 14
 Wagner apparently concedes that the first machine broke down and notice thereof was given.
 
 
 15
 'Within a few days after No. 2019 arrived at St. Rose DuLac, it became apparent that the machine would not and did not perform properly (Ex. 71, Ferec dep pp 14, 64-66; Tr 44). Meetings and telephone conversations were held and an exchange of correspondence took place between Ferec, representatives of Frost and representatives of Wagner.' (Appellant's (Wagner) Opening Brief, p. 4.)
 
 
 16
 Finding a warranty as to No. 2019, a breach and notice, the only remaining question is in regard to the damages. The Supreme Court of Oregon has said that 'the measure of general damages * * * is the difference between the value of the goods actually received and the value they would have had if they were as warranted.' Sol-o-Lite Laminating Corp. v. Allen, 223 Or. 80, 353 P.2d 843, 848 (1960). Accord, Western Feed Co. v. Heidloff, 230 Or. 324, 370 P.2d 612 (1962). This is the general rule. E.g., Isenberg v. Lemon, 84 Ariz. 340, 327 P.2d 1016 (1958). In the present case, we can only determine the difference in values by looking at what it cost to correct the deficiences in No. 2019. This was $4,350.14, and that amount was awarded by the trial court as damages for the breach of warranty on No. 2019.[2]
 
 
 17
 Frost has also claimed certain elements of special damages from the breach, including loss of expected profits, finance charges, and losses on the eventual disposal of the machine. The loss of expected profits element can be dismissed summarily because the uncontradicted evidence shows that No. 2019 was replaced by No. 2033 on which there was an even larger profit. Though loss of profits may be a recoverable element, Western Feed Co. v. Heidloff, supra, that element has not been established in this case.
 
 
 18
 As to the finance charges, we must agree with Wagner that they are not proximately caused by the breach. Frost has cited no cases in support of this element of its claim. First, it appears that these costs are completely dependent upon the method chosen by Frost to provide money for its operations. If Frost had chosen to finance the keeping of this machine out of working capital, there would have been no such charges. Second, we take it as elemental that upon discovery of the breach of warranty Frost was fully entitled to rescind the purchase contract with Wagner. Cf. Kuchta v. Western Oldsmobile, Inc., 224 Or. 50, 355 P.2d 458 (1960). See, e.g., Green v. Antoine, 133 Cal.App.2d 269, 284 P.2d 76 (1955), Ericksen v. Poulsen, 15 Utah 2d 190, 389 P.2d 739 (1964). Had Frost elected to rescind and return No. 2019, he would not have been required to finance his continued possession of the machine. Having elected not to rescind and to retain possession, he cannot now burden Wagner with the costs of that decision.
 
 
 19
 To a certain extent, the same discussion applies to the losses incurred fom the eventual disposal of machine No. 2019. On discovery of the breach of warranty, Frost was faced squarely with the choice of remedies. He could rescind or he could keep the machine and sue for damages. In selecting the latter course of action, he took upon himself the risk of loss as well as the opportunity of profit in keeping the machine. The loss on disposal of the machine was not caused by the breach, but by Frost's business decision in electing to keep it. Wagner cannot be charged with the consequences of Frost's business judgment.
 
 
 20
 Interest was properly allowed from the time of the loss to Frost. Northern Pacific Ry. Co. v. Twohy Bros. Co., 95 F.2d 220 (9th Cir. 1938), Public Market Co. v. City of Portland, 171 Or. 522, 130 P.2d 624, 138 P.2d 916 (1943). As to the first machine, No. 2019, the trial court was not in error, and the judgment as to it must be affirmed.
 
 II. Machine No. 2033
 
 21
 It is necessary that the same elements of the cause of action be found as to the second machine, No. 2033, to enable Shields, Frost's trustee, to recover.
 
 
 22
 As in the case of No. 2019, under Ore.Rev.Stats. 75.150(1), quoted above, an implied warranty of fitness arose as to No. 2033. The evidence is clear that Wagner, knowing of the failure of No. 2019, specified No. 2033 as the replacement. (See Exh. 71, p. 15, lines 17-20.)
 
 
 23
 The trial court found that there was a breach of this warranty. Under Rule 52(a) of the Federal Rules of Civil Procedure, we should overturn this finding only if it is clearly erroneous. If supported by substantial evidence, we cannot say it is clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). On the record as a whole, there is ample evidence to support the finding that the machine was not fit for the intended use. (E.g., T.R. 112-13.)
 
 
 24
 We agree with the trial court that adequate notice was given to Wagner of the breach. Though many different notices are asserted by Frost, the disputed wire of August 20, 1959 (Exh. 18) from Ferec is sufficient, if it came to Wagner's attention.[3] The wire, indicating Ferec's 'intention to sue' due to 'breakdowns' and 'failures', reasonably informed Wagner of the condition of the machine as being in breach of the warranty. Though the wire was directed to Frost, Wagner should have known that a breach of Frost's implied warranty of fitness was also a breach of Wagner's since the essence of the warranties was the same, i.e., fitness for the use intended. It is enough if Wagner was informed of the buyer's intention to assert his legal rights. Howard-Cooper Corp. v. Umpqua Dredging & Constr. Co., 148 Or. 582, 36 P.2d 590, 592 (1934).
 
 
 25
 Having breached its warranty, and having received sufficient notice of the breach, Wagner was liable to Frost for general damages and any special damages proximately caused by the breach. As discussed above, the general damages would be the difference between the value of the goods delivered and the value the goods would have had if they conformed to the warranty. This can be reasonably measured by the cost of bringing the goods up to the warranty specifications.
 
 
 26
 The trial court found damages for No. 2033 in the amount of $32,500. We are at a loss to discover how the trial court arrived at that figure. Only by allowing some but not all of the elements claimed by Frost as damages can we even approach such a figure. We do not know which elements were included or excluded, or why. Without any discernable basis in the record, the award cannot stand.
 
 
 27
 While we find it necessary to reverse as to No. 2033, the only question to be resolved on remand is the amount of damages. Frost is entitled to general damages, as indicated above, measured by the reasonable cost of bringing the machine up to warranty specifications. On remand only the amount of those damages need be resolved.
 
 
 28
 The question of whether, in addition, Frost should recover any special or consequential damages is still open. There is no dispute that Frost reacquired No. 2033 from Ferec. Wagner contends that the contract between Frost and Ferec on No. 2033 remains in full force and effect and was not rescinded due to any breach of warranty. Wagner further contends that the return of No. 2033 was a result of Ferec's default in payments. On remand the trial court must determine if the Frost-Ferec contract has been rescinded and whether the breach of the warranty proximately caused the rescission. If there has been no rescission or if the breach was not the proximate cause of the rescission, Frost would not be entitled to any special or consequential damages, as distinguished from general damages.
 
 
 29
 That part of the judgment providing for damages in the amount of $32,500 is vacated, and the case is remanded for the determination of the damages suffered by Frost in regard to No. 2033 as indicated in this opinion. The remainder of the judgment is affirmed.
 
 
 
 [1]
 Since the sale was in 1959, these provisions apply. Oregon Laws 1961, c. 726, 427(2). Oregon replaced these provisions in 1961 with the Uniform Commercial Code. Oregon Laws 1961, c. 726
 
 
 [2]
 Wagner conceded that the amounts of the elements comprising the $4,350.14 were correct. (T.R. 226, Exh. 79, p. 2, No. III.)
 
 
 [3]
 Wagner contends, not that it did not receive the telegram, but that there is no evidence of receipt. There is evidence, however, that it was sent. (R.T. 94, lines 21-22.) There is a presumption of receipt after proper dispatch of a telegram analogous to letters properly mailed. Oregon S.S. Co. v. Otis, 100 N.Y. 446, 3 N.E. 485 (1885). This presumption sustains the trial court's finding that adequate notice reached Wagner