Argued June 8, affirmed July 6, petition for rehearing
denied August 5, 1960

# SOL-O-LITE LAMINATING CORP. *v.* ALLEN
### 353 P. 2d 843

*Carlton R. Reiter* argued the cause for appellant. On the brief were Stern, Reiter, Day & Anderson, Portland.

*Parker Gies*, Salem, argued the cause for respondent. With him on the brief were Lawrence N. Brown and Asa L. Lewelling, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, GOODWIN and HOLMAN, Justices.

HOLMAN, J. (Pro Tempore)

Plaintiff, Sol-o-lite Laminating Corp., brought this action against the defendant Allen for $7,787.25 which it claims is the balance due on the reasonable value of goods sold by plaintiff to defendant. Defendant counterclaimed for $26,825.51 damages for breach of implied warranty. The two issues were submitted to a jury which returned a verdict of $1,000 for plaintiff. From the entry of this verdict, plaintiff appeals.

The evidence, which will be viewed in the light most favorable to defendant, indicates plaintiff was in the business of supplying wholesalers with various items of plastic and plastic-treated materials which were used primarily as glass substitutes. Defendant was a wholesaler who sold to hardware stores, lumber yards and small general stores that were engaged in retail business. Defendant ordered from plaintiff several hundred rolls of 48″ clear vinyl plastic which was used by the ultimate consumer for the principal purpose of making storm windows. Part of the material was cloudy and not clear, and a very small portion

of it was patched by being taped together or was smeared with ink. The material was packed in sealed containers by plaintiff and shipped to defendant's warehouse in Salem, where it remained the property of plaintiff until such time as defendant withdrew it for sale to customers. At that time defendant was billed by plaintiff for the amount so withdrawn. The defective material was delivered by defendant to his customers without knowledge by him of its condition. After some defective material was discovered by defendant's customers, defendant notified plaintiff and was assured by plaintiff that further material would be of good quality, but additional defective material was received and delivered to defendant's customers, again without defendant's knowledge of its condition. Defendant again notified plaintiff of the faulty condition. Defendant also sold identical 36″ clear plastic of good quality furnished by plaintiff to its same customers under defendant's own brand name, and this was known to plaintiff, as plaintiff furnished the literature proclaiming it to be "Allen's" clear plastic.

Plaintiff's first assignment of error challenges the sufficiency of defendant's cross-complaint for breach of warranty. Omitting the immaterial paragraphs, defendant's cross-complaint is as follows:

"II

"Prior to June 5, 1957, Defendant purchased from Plaintiff from time to time, by description, rolls of vinyl plastic and coated fabrics and screens, which is the same merchandise erroneously described in Paragraph III of Plaintiff's complaint as 'rolls of wax cloth, Nu-V-Glass, Crystal Lite 36″, Glaz Screen, Crystal Lite 48″', and Defendant was charged by plaintiff for said merchandise in the sum of Twenty-three Thousand and Nine Hun-

dred Forty-Six ($23,946.00) Dollars as alleged in Paragraph III of plaintiff's complaint.

"III

"Plaintiff knew that said merchandise was purchased by Defendant for resale and that the principal use of the 48″ clear vinyl plastic described by Plaintiff as Crystal Lite 48″, was for storm windows.

"IV

"Defendant distributed the same in its original containers to his various customers in the States of Oregon, Washington and Western Idaho. After distribution of said merchandise to his customers as aforesaid, Defendant learned for the first time that one pattern of said merchandise, consisting of 48″ vinyl plastic, was defective in quality in that the same was not clear but cloudy and that many of the rolls were taped together and were otherwise defective and inferior. Up to this time Defendant has been notified of the defective condition of at least one hundred rolls.

"V

"Within a reasonable time after Defendant discovered said defects, Defendant notified Plaintiff of the defects in said merchandise and Defendant's business was damaged by said defects.

"VI

"As the result of said merchandise being defective and inferior in quality as aforesaid, Defendant was unable to realize anything from some of said merchandise and had lost and was still losing customers up to June 6, 1957.

"* * * * *

"VIII

"Subsequent to said settlement date as aforesaid, Defendant has continued to lose customers and his business has continued to suffer up to this time.

"As the result of said merchandise being defective and inferior in quality as aforesaid, Defendant has been damaged up to this time in the sum of Twenty-nine Thousand Eight Hundred Twenty-five and 51/100 ($29,825.51) Dollars as follows:

| | |
|---|---:|
| Damages accruing in connection with replacement of 59 rolls of defective merchandise less 14½ rolls heretofore paid for by Plaintiff | $ 901.25 |
| Cash paid to two salesmen as the result of damages for defective materials | ~~3,000.00~~ |
| Loss of profits up to March 31, 1958 | 9,924.26 |
| Damages to business and good will estimated at | 16,000.00 |
| | $ ~~29,825.52~~ |
| | 26,825.51" |

Defendant in his brief states his position relative to his cause of action as follows:

"Defendant never has contended, nor does he contend now, that the cause of action set forth in his answer and counterclaim, as amended, purported to state anything other than a cause of action for breach of implied warranty of merchantable quality resulting from a sale by description."

■ This would indicate that he is depending on § 15, subsection (2), of the Sales Act, a part of ORS 75.150, which states as follows:

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

Even though defendant has alleged that the goods were purchased for a particular purpose known to plaintiff, he cannot depend on subsection (1) of the same statute because he has not alleged reliance upon plaintiff's skill or judgment. This subsection is as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller that particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

For the same reason, that is, that there is no allegation of reliance, defendant is prohibited from contending that he is entitled to recover on an express warranty. *Feeney & Bremer Co. v. Stone*, 89 Or 360, 171 P 569; *Wells v. Oldsmobile Co.*, 147 Or 687, 35 P2d 232.

■ Defendant is attempting to make a statement of his position more difficult than is actually necessary. His position would appear to be that he agreed with plaintiff for plaintiff to sell him clear vinyl plastic, as a result of which there was an implied warranty that the goods would fit the description; i.e., that they would be clear. Such an implied warranty is imposed by § 14 of the Sales Act, it being the same as ORS 75.140, which states in part as follows:

"Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description, * * *."

In other words, he contends that he bargained for clear vinyl plastic and he received cloudy material instead. It is true that he alleges the plastic was broken and

taped together, but the evidence indicates that the deficiency of this kind was so minimal that it did not justify submitting to the jury any question of damages. As a result, it is essential to defendant's cause of action that the plaintiff be obligated to deliver to him "clear vinyl plastic." This is true whether he is depending on an implied warranty that the goods would fit the description or an implied warranty of merchantable quality in a sale by description. Plastic of other than absolute transparency is not per se of unmerchantable quality. Defendant appears to recognize this when he says in his brief:

> "A reading of the transcript of defendant's evidence adduced before this motion was made shows abundant evidence * * * that defendant ordered the 48 inch plastic from plaintiff by description as 'clear vinyl plastic,' * * *."

We will now proceed to examine defendant's cross-complaint to see if he alleges facts sufficient to state a cause of action for breach of an implied warranty in a sale by description. It will be noticed in paragraph II of defendant's cross-complaint that he alleges he purchased "by description." This is a conclusion of law and is a nullity. See *Kelley et ux. v. Mallory et ux.*, 202 Or 690, 697, 277 P2d 767, and cases there cited. If we omit the words "by description," this leaves defendant alleging he purchased rolls of vinyl plastic. The only mention in the entire complaint of "clear vinyl plastic" is the recitation in paragraph III that the principal use of the "48 [inch] clear vinyl plastic" was for storm windows. This does not constitute an affirmative allegation that defendant purchased "clear vinyl plastic." Defendant contends that his cross-complaint identifies the vinyl plastic he purchased as being the same as the merchandise errone-

ously described by plaintiff as "Crystal Lite 48″" which, in turn, is identified in paragraph III as being the same as the clear vinyl plastic plaintiff knew was being purchased by defendant for resale for storm windows and that, therefore, it constitutes an allegation he purchased "clear vinyl plastic." We cannot so agree.

 In addition, defendant only alleges that he purchased the goods. A warranty does not automatically arise from the purchase of goods. If he purchased "clear vinyl plastic," he has no complaint. What he meant to say was that he bargained for it and did not get it. In a sale by description, under the circumstances disclosed by the cross-complaint, the goods must be identified by means of a description by the buyer in his order or by the seller in his offer. Defendant neither alleges that he ordered the goods by descriptive terms nor that he was so offered them. It is possible to purchase goods where no warranty arises even if they are purchased for a particular purpose of which the seller is aware, as defendant alleges.

 Defendant's allegation of damages falls into three separate items. He alleges he is damaged in a certain sum and then qualifies it with the words "as follows" and then particularizes. In the first item he claims $901.25 "for damages accruing in connection with the replacement of 59 rolls of defective merchandise." This is not an allegation of any compensable damage, as the measure of general damages, which is apparently what defendant is attempting to allege, is the difference between the value of the goods actually received and the value they would have had if they were as warranted. *Boone v. Lockhart,* 143 Or 299, 22 P2d 317; *Wells v. Oldsmobile Co.,* supra. The replacement value is beside the point and irrelevant. The third

item is the damage to business and good will estimated at $16,000. Admittedly, such damages are not capable of exact ascertainment, but at least the damage he claims should be capable of exact statement, not an estimate.

■ In our opinion the cross-complaint does not state a cause of action for breach of any type of an implied warranty on a sale by description of "clear vinyl plastic."

We will now proceed to examine some of the other grounds of claimed error.

■ Plaintiff contends that there is no competent proof of damages. As indicated previously, the general damages would be the difference between the value of the defective rolls and their value if they had been as warranted. There is little, if any, testimony concerning the value of the faulty plastic that was actually delivered. Defendant referred to it as "junk." If this can be construed as meaning "worth nothing at all," one may say that established the defective rolls as valueless. The only evidence of the value of the good rolls was what the defendant paid for them. This is not necessarily their value.

Defendant's second request for damages was for loss of profits. Defendant's testimony concerning loss of profits was that during the year in which it delivered the faulty material to its customers it sold 150 specified customers who received faulty material $38,149.15 worth of merchandise. This included not only sales of the article claimed to be faulty, but also many other kinds of merchandise. In other words, it was the total business done with those customers. In the year following, defendant did only $11,326.82 worth of business with those same customers. The difference in total

sales between the two years was $26,354.32. Defendant testified he made a gross profit of 37% on total sales, and, therefore, he lost $9,924.25. He said his cost of doing business was constant, regardless of how much business he did; therefore, his gross profit and his net profit were the same.

There was no testimony from which could be determined the net profit he could have made on the sale of the faulty 48″ plastic if it had been as warranted.

 Defendant is obviously laboring under the misapprehension that loss of profits for breach of warranty of an article purchased for resale means the loss he suffered after the breach and before trial on all items because his business reputation had been damaged. Loss of profits for breach of warranty on an article purchased for resale contemplates only the loss of profits on the defective article actually purchased, in this case the loss of profits on those rolls of 48″ plastic which were defective. It does not cover the profits he might have made on similar plastic he would have sold in the future or loss of profits on other items he would have sold had his customers not become disgusted with him. These are losses which tend to prove damage to good will. By submitting such a figure to the jury as a separate item under the term "loss of profits" in addition to the claim for damages to good will, there was a duplication of claims for damage.

 In addition, this court would have to recognize, despite defendant's testimony to the contrary, that his gross profit and his net profit could not be identical. From his testimony it is apparent he had to deliver the goods to his customers and pay a commission to his salesmen. The thing to which he testified was

obviously impossible, and, therefore, his testimony was not competent to prove anything.

For the reasons stated above the trial court obviously erred in submitting to the jury the item of damage denoted loss of profits. We will now confine our consideration to whether there was any proof upon which to present to the jury the question of damage to good will.

Plaintiff contends defendant submitted no competent evidence of damage to the good will of his business. This requires a review of the evidence. First, there is the evidence of loss of customers and business in the year succeeding the delivery of the defective plastic. This was previously set out in relation to loss of profits. In addition, the defendant also testified customers refused to deal with him because of the defective merchandise which had been furnished to him by plaintiff. This was verified by defendant's salesmen who recounted in detail their trials and tribulations with customers who had received the defective material. They told how the customers refused to do business with them. Four customers who had done business with defendant were called as witnesses and testified concerning their receipt of the defective material and how they had reduced or terminated their dealings with defendant because of it.

This, we believe, constituted adequate evidence to go to the jury on the question of damage to good will. Plaintiff's principal objections revolve around the contention that the evidence is too remote and speculative and not of the required degree of certainty. Uncertainty precluding recovery of damages relates to uncertainty whether any damages have resulted, not to damages which are the certain result of

breach of contract but which are uncertain in amount. *Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438; *Carlson v. Steiner,* 189 Or 255, 220 P2d 100. The extent of damage to good will is not capable of exact proof. To require such proof would merely be to say it was not a compensable damage, and many courts have so held, principally upon the theory that the damage was too remote and speculative and not within the contemplation of the parties. McCormick on Damages 677, § 176, in discussing the rejection by many courts of such claims, says as follows:

> "* * * Sometimes it is said not to have been in the 'contemplation' of the seller, but, in cases where the article is an important part of the buyer dealer's stock in trade, and especially where it is furnished to be marketed by the dealer under his own brand, a substantial injury to the latter's 'good will' would seem to be an ordinary and natural consequence of the furnishing of unsatisfactory merchandise. Again, it is often said to be 'remote and speculative,' and in other cases the requirement of certainty of proof of the amount is held not to be satisfied. Of course, if this element of injury to 'good will' is to be allowed at all, no very stringent standard of certainty can be insisted on, for the fullest showing of the circumstances—complaints and return of goods by customers, volume of business before and after, etc.—will leave the ascertainment of the amount of loss still a matter of estimate and opinion."

We believe it is a proper basis for the recovery of damages in an otherwise adequate case of breach of warranty where, as in this case, there is evidence that the seller knew the goods were being purchased for resale for a use which required a certain standard of clarity and that they were being resold with similar goods which were sold under the purchaser's trade

name. Such damages then can hardly be said not to be within the contemplation of the parties.

For cases holding damage to good will by breach of warranty is compensable see: *Isenberg v. Lemon*, 84 Ariz 340, 327 P2d 1016, reh. 84 Ariz 364, 329 P2d 882; *Stott v. Johnston*, 36 Cal2d 864, 229 P2d 348, 28 ALR2d 580; *Barrett Co. v. Panther Rubber Mfg. Co.* (CCA, Mass) 24 F2d 329. Also see 17 ALR2d 1379 (Recovery for loss of business resulting from resale of unwholesome food or beverage furnished by another) and 28 ALR2d 591 (Recovery by contractor or artisan, suing for breach of warranty, of damages for loss of good will occasioned by use in his business of unfit materials).

██ While defendant's cross-complaint does not state a cause of action and there were prejudicial errors committed during the trial, as indicated, it would appear there was sufficient evidence to make a jury question on breach of warranty and damages to the good will of defendant's business. Plaintiff raises many other questions relative to the sufficency of defendant's proof to show a cause of action. We have considered them and believe there was sufficient proof to make a jury question on them.

There is no way of knowing how much of plaintiff's claim was allowed or how much it was diminished by defendant's counterclaim, if at all, as the jury verdict was a composite one. Defendant has not appealed. Plaintiff has, but says it does not desire a new trial and only requests that the court award it a judgment pursuant to its authority under Art VII, § 3, of the Oregon Constitution, which provides that if this court can determine the judgment which should have been entered below, it shall direct such judgment be entered.

This is a power which the court may exercise in its discretion. *Hoag v. Washington-Oregon Corp.*, 75 Or 588, 144 P 574, 147 P 756. Owing to the fact it would be extremely difficult from the record to determine the claims of both parties on the merits, this court does not choose to exercise its authority in this case. Because of plaintiff's position that it does not desire a new trial, the judgment of the lower court is affirmed.