Argued July 13, affirmed December 13, 1973

HUTCHINS ET UX, *Respondents, v.* MUTUAL OF
ENUMCLAW INSURANCE COMPANY,
*Appellant.*
516 P2d 1273

*Alfred T. McGill,* Portland, argued the cause for

appellant. On the brief were Richard T. Clarke, and McGill & Clarke, Portland.

*Charles V. Elliott,* Portland, argued the cause for respondents. With him on the brief were Elliott & Davis, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL and BRYSON, Justices.

BRYSON, J.

This is an action on a homeowner's extended insurance policy to recover losses to plaintiffs' property which plaintiffs allege to have occurred when a road construction company was blasting in the vicinity of their residence. The trial court, sitting without a jury, found that the blasting was the proximate cause of plaintiffs' damage and, therefore, not within one of the exclusionary clauses of the insurance policy, and entered judgment for plaintiffs. The defendant appeals.

The defendant first contends that "[t]here was insufficient evidence upon which to base a finding that plaintiffs' home was damaged by blasting." We view the evidence in a light most favorable to the plaintiff and if there is evidence to support the court's findings the judgment will not be disturbed.

During October of 1968 a highway was being constructed in the vicinity of plaintiffs' home near West Linn, Oregon. Plaintiffs' residence was located some 4,000 feet from the blasting site. Construction of the roadway required extensive blasting to remove rock and earth and this was conducted between October 25 and October 31, 1968. Several side-casting shots were initiated to remove material from a hillside. Four

thousand four hundred thirty, 7,000, and 8,200 pounds of explosives were detonated, each in a series of seven delays of one hundredths of a second.

On or about October 30, 1968, plaintiffs' home was shaken by an explosion. Mr. Hutchins was thrown to the floor and Mrs. Hutchins ran outside the house. They thought something had exploded in the basement. After the explosion, plaintiffs discovered plaster dust and pieces of plaster on the floor of their home and cracks in the wall of their dining room and living room. The east basement wall of the house was "bowed" out of line; masonry at the front of the house had been cracked and loosened, and moisture problems occurred in their basement. Plaintiffs testified that none of these conditions existed prior to the explosion.

Mr. Bird, plaintiffs' neighbor, testified:

"* * * [A] little bit after 2:00 [p.m.], and all of a sudden the house just cracked, and there was just kind of a big concussion (indicating). It scared me, and I run outside and—to see what happened. And my horses were both trying to get out of the barn at the same time. It spooked them. They run up in the pasture like crazy, * * *."

Immediately after the explosion he discovered plaster dust over his davenport and a crack in the ceiling of his home, none of which existed prior to the explosion.

Defendant argues that plaintiffs' testimony should be disregarded because it transcends the laws of nature and it was inherently or physically impossible for the blasting to have caused plaintiffs' damages.

Mr. Cooper, an engineer, was the defendant's sole witness. He was also employed by the highway construction company. It was his opinion that the damage

to plaintiffs' home was not caused by the blasting. However, he testified as follows:

"Q * * * Is it your testimony that the blast that was fired, 7,000 pounds on the 30th of October, could not have caused any plaster damage to the Hutchins' house or to houses in that area?

"A I'd have to say that it's possible to cause some damage."

He also testified that there is no certainty in determining the areas which may be affected by blasting since the consequences of an explosion are dependent upon many variables. Mr. Cooper described the three different types of reaction caused by such blasting: ground shock, air blast, and reactive air wave, and in his opinion you cannot predict with utter certainty the consequences of a blast; that temperature, wind velocity, humidity, and components of the earth material make a difference in the transfer of the shock and the distance it travels.

We conclude there was evidence from which the trial court could find that plaintiffs' damages were caused by the blasting.

■ Defendant next contends "there was insufficient evidence to base a determination of the amount of said damages."

Plaintiffs called Mr. Thompson of G & T Construction Co., Inc., to testify regarding the cost of repair to plaintiffs' home. He had been repairing and building houses and apartments for 20 years. He first inspected plaintiffs' house and damages approximately one year before the trial and again one month before the trial. His first estimate to repair was $5,450. After the second inspection he submitted a written bid which

was received in evidence, without objection, which stated the following:

| | |
|---|---:|
| "Basement walls cracked, bowed-in on east side. Excavate outside to foundation line, straighten wall, repair cracks inside and out, re-waterproof all walls on outside—backfill and compact. | $3,975.00 |
| Clean mildew and cracked paint from inside basement walls and repaint. | 270.00 |
| Replace floor tile in basement. | 110.00 |
| Replace patio, sidewalks and repair front porch. | 910.00 |
| Repair brick and stone work on front of house. | 190.00 |
| Repair cracks in plaster throughout house. | 385.00 |
| Repaint interior walls and ceilings throughout house. | 438.00 |
| TOTAL | $6,278.00 |

It was explained that there was no difference in required repairs between the time of the two bids, but the difference in price resulted solely from increased costs. The court allowed damages in the amount of $3,150 after personally viewing the premises and the damages. The defendant argues that "[e]ven if there had been sufficient evidence of damage by blasting, there was insufficient evidence upon which to base a determination of the amount of said damages." We have held that the amount of damages cannot be left to surmise or speculation. *Parker v. Harris Pine Mills, Inc.*, 206 Or 187, 197, 291 P2d 709 (1955)—but absolute certainty is not required. *Cross et ux v. Harris*, 230 Or 398, 370 P2d 703 (1962). In *Cross* we stated:

"* * * [T]he only question is whether the evidence as to the extent of the damage is sufficient.

Upon that question it is to be borne in mind that the mere fact that damages may not be exactly calculated is not sufficient reason for disallowing them. *Sol-O-Lite Laminating Corp. v. Allen,* 223 Or 80, 93-94, 353 P2d 843; *Buck v. Mueller,* 221 Or 271, 282, 351 P2d 61." 230 Or at 406.

The principal damage to plaintiffs' home was repair to the basement wall. Other items in Mr. Thompson's estimate are obviously not required as the result of blasting, such as replacing sidewalks and painting "interior walls and ceilings throughout house." We are in no position to determine how the trial judge arrived at the exact amount allowed in the judgment, but he undoubtedly considered the first estimate of repairs which was lower than the second estimate of $6,278. The record discloses that the judge made meticulous notes of the evidence and viewed the damage to the premises.

We conclude from the record that there is evidence from which the court could calculate and determine the amount of damages.

Affirmed.