Argued October 7, affirmed as modified November 6, 1975

# BROWN, *Respondent, v.* ZIMBRICK LOGGING, INC. ET AL, *Appellants.*

541 P2d 1388

*James C. Tait,* Oregon City, argued the cause for appellants. With him on the briefs was Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

*Richard A. Seideman,* Salem, argued the cause for respondent. With him on the brief was Garrett, Seideman & Hemann, Salem.

BRYSON, J.

Plaintiff-lessor commenced this action against defendant-lessee and its employee, Vern Majors, to recover damages resulting from defendants' alleged negligence in transporting plaintiff's Bucyrus Erie Crawler crane. Trial was before the court, and judgment was entered for plaintiff. Defendants appeal.

The facts in this case are largely undisputed. In June of 1973 plaintiff leased his crane to Zimbrick Logging, Inc., for an indefinite period. In August of that year, Zimbrick Logging, Inc., was moving the crane on a "low-boy" trailer to a job site when the crane and trailer fell off the side of a logging road, damaging the crane.

The accident occurred at a point where the road curved to the right on a slight incline. The road was "soupy" because of rain; there was "lots of slush and mud," approximately four inches deep. The rock-surfaced road, which was about thirteen feet wide, was "real slick."

Defendant Majors, Zimbrick Logging, Inc., employee, was driving the truck with the trailer and crane in tow. Before he attempted to negotiate the curve, Majors stopped to check the tire chains. Roy Zimbrick, president of Zimbrick Logging, Inc., was following the rig in a pickup and described what occurred:

"A * * * Vern Majors stopped the lowboy at this point, and we checked the chains and so forth. Then started around this corner relationship [sic] and high fill. At that place the lowboy

didn't track around the corner, they don't lead the same way. He had the front end on the left-hand side of the fill going up, and the right-hand side didn't track around the corner. The edge of the road slid from underneath the wheels of the lowboy, and the whole thing went over * * *."

"* * * * *

"A * * * [A]t the time we were crossing the fill, the road was soupy, the lowboy started to slide sideways on the road, and the shovel [crane] and the lowboy went over together."

This was not the first time that Zimbrick Logging, Inc., had experienced difficulty in transporting equipment over the road under similar conditions. Zimbrick testified:

"Q Okay. You are talking about a day or two before a truck had trouble sliding?

"A Yes."

Zimbrick further testified that the crane could have been "walked," or moved under its own power, instead of being towed on the trailer:

"Q Was this ground too steep where the accident happened?

"A No. It could have walked the road.

"* * * * *

"Q Could that crane itself fit on the fill and travel across it?

"A Uh-huh. Crossed it once before."

■ Defendants assign as error the trial court's finding that defendants were negligent. Since trial was held without a jury, the scope of our review on appeal is limited to the narrow issue of determining whether there is any evidence, which we consider in a light favorable to plaintiff, to support the trial court's finding. *Hassan v. Guyer,* 271 Or 349, 532 P2d 227 (1975).

■ We cannot agree with defendants that the evidence adduced at trial is "at best evenly balanced" between the presence and absence of negligence on defendants' part. The record shows that the logging road was slippery because of the rain and mud; that defendants had prior notice of these conditions; that the crane could have been "walked" across the fill and that the crane and trailer slid over the side of the road as defendants attempted to negotiate the uphill curve; that Majors, driving the truck pulling the lowboy trailer with the crane on it, knew that the road was slippery with "soupy" mud and was hazardous and did not exercise reasonable care in operating the truck and trailer under the conditions then existing.

■■ Nonetheless, defendants contend that the evidence fails to support the specific allegations of negligence in the complaint. The complaint is not a model of preciseness but its allegations, in determining its effect, are to be liberally construed. ORS 16.120. When, as in this case, the complaint reaches this court without having been demurred to or moved against, we indulge in every reasonable inference, from the allegations, to support it. *Sterrett v. Hurlburt et al,* 129 Or 520, 522, 275 P2d 689 (1929). After examining the record, we conclude that the evidence adduced at trial is sufficient to support the trial court's finding that defendants "were negligent as specified within the complaint," causing the trailer and crane to roll down into a canyon.

Defendants also assign as error the trial court's award of $3,750 to plaintiff as loss of "rental income" for the period that the crane was out of use. Defendants contend that there is no substantial evidence to justify the award.

■■ Plaintiff's loss of use was a proper item of damages in this case. *Shepherd v. Hub Lumber Co.,* 273 Or 331, 541 P2d 439 (1975). See also, Oleck,

Damages to Persons and Property 362, § 201 (Rev ed 1961); McCormick, Law of Damages 472, § 124 (1935); Annot., 18 ALR3d 497, § 6 (1968). Furthermore, we have always held that exact mathematical calculation of damages is not a prerequisite to recovery. "It is sufficient, if from proximate estimates of witnesses, a satisfactory conclusion can be reached * * *." *Brown v. McCloud,* 96 Or 549, 552, 190 P 578 (1920). *Accord, Buck v. Mueller,* 221 Or 271, 283, 351 P2d 61 (1960); *Hutchins v. Mutual of Enumclaw Ins.,* 267 Or 276, 281, 516 P2d 1273 (1973).

Defendants first argue that there was no evidence that seven weeks and one day was a reasonable time to complete the repairs to plaintiff's crane. Plaintiff testified the crane was "down from August 25 to October 15." The parties stipulated "that the damage to the crane, to the housing, carriage, items like that, were in the amount as alleged in the complaint, $9,633. Also, that the damages were caused by the accident." After the accident, the defendants took the crane to Halton Tractor, Portland, for repairs and after they were completed, picked it up and returned it to the job site.

■ We have reviewed the record and are satisfied that the evidence supports a finding that in the instant case seven weeks and one day was reasonably required to obtain parts and effect $9,633 worth of repairs to plaintiff's crane.

■ Defendants next contend that "plaintiff had the burden of proving not only the gross fair market rental value of the crane but also the expenses, including depreciation, which must be deducted in determining just compensation."

"* * * [R]ental value of property used for business purposes means, not the conjectural or even probable profits which might accrue to the plaintiff from his business, but the fair rental

value * * * in the open market. Deduction from rental value should be made for depreciation of the item of property during repairs, or the recovery will overcompensate plaintiff." 22 Am Jur 2d, Damages § 155 at 223-24 (1963).

See also Oleck, *supra* at 362; McCormick, *supra* at 473.

■ At trial, plaintiff produced evidence of the rental value of his crane. Such evidence is admissible to prove his loss of use. *See Shepherd v. Hub Lumber Co., supra.* This evidence shows that plaintiff received, as rental income, an average of $3,444 per month ($861.61 per week) *prior* to the accident. For the entire five-month period of the lease, before and after the accident, plaintiff received an average of $2,600 per month ($13,000 for five months). There also was evidence that a similar crane could be rented for $3,150 per month.[1]

■ The trial court awarded plaintiff $3,750, the equivalent of $534 per week or $2,136 per month, for his loss of use during the seven-week period. We are satisfied that the trial court's award, which was less than that established by plaintiff's evidence, sufficiently reflects any wear and tear and depreciation which plaintiff may have realized. In making its finding, the trial court stated:

"* * * I think it's only fair that some adjustment be arrived at.

"I'm satisfied that the proof here does sustain a minimum of $3750 for the down time, so the Court will fix that as the judgment * * *."

---

[1] Zimbrick Logging, Inc., continued its logging operations during the seven-week repair period with the use of a substitute crane. In five of those seven weeks, Zimbrick Logging, Inc., harvested approximately one million board feet of lumber with the use of the substitute crane. Under the rental agreement, plaintiff would have been entitled to $3.00 per thousand board feet, or $3,000 ($600 per week) for that period had his crane been used. There is also evidence by Zimbrick Logging, Inc., that it was paying "almost $4,000 a month" to plaintiff for the crane.

We conclude that plaintiff did meet its burden of proof and the trial court adjusted the total to reflect the net amount after depreciation.

Defendants next contend that plaintiff's evidence regarding the fair rental value of the crane was incompetent because "[p]roof of fair market value for the entire [seven weeks and one day] period * * * was required." The evidence, previously discussed, establishes the average weekly and monthly rental value for the crane which plaintiff could have obtained for the seven-week period but for defendants' negligence.

■ Finally, defendants contend that plaintiff's recovery cannot exceed the value of the crane. This issue was never raised at trial. Further, Mr. Zimbrick, defendants' witness, testified that "Halton Tractor made an appraisal of the machine" at $27,000 at the time of the accident. Defendants are hardly in a position to now contend that plaintiff's recovery of $13,383 is or could be in excess of the crane's appraised value. We find no error in this respect.

The parties stipulated on appeal that the judgment below be modified by deleting the trial court's award of prejudgment interest and that, in lieu thereof, plaintiff should be awarded interest at six percent per annum on the sum of $13,383 from the date of the entry of judgment, January 17, 1975, until paid. It is so ordered.

The judgment of the trial court is affirmed as modified.