Argued and submitted July 18, affirmed December 8, 1980

McVAY et al,
*Appellants,*
*v.*
DESCHUTES VALLEY POTATO CO.,
*Respondent.*

(No. 77-216L, CA 15620)

SCHMIDLI,
*Appellant,*
*v.*
DESCHUTES VALLEY POTATO CO.,
*Respondent.*

(No. 77-217L, CA 15621)

HAGERTY,
*Appellant,*
*v.*
DESCHUTES VALLEY POTATO CO.,
*Respondent.*

(No. 77-218L, CA 15622)

LINDSAY et al,
*Appellants,*
*v.*
DESCHUTES VALLEY POTATO CO.,
*Respondent.*

(No. 77-219L, CA 15623)

(Consolidated Cases)

620 P2d 930

Douglas V. Osborne, Klamath falls, argued the cause and filed the brief for appellants.

Richard C. Whitlock, Klamath Falls, argued the cause for respondent. With him on the brief was Beddoe & Hamilton.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

THORNTON, J., dissenting opinion.

**BUTTLER, J.**

In these consolidated actions for breach of express and implied warranties under Oregon's Commercial Code, plaintiffs appeal from a judgment entered on a jury verdict for the defendant. Plaintiffs assign as error the court's failure to give a requested instruction, and the giving of certain portions of two instructions. We affirm.

Plaintiffs, commercial potato growers, purchased seed potatoes from defendant. These potatoes were delivered directly to the plaintiffs' storage cellars in late March and early April, 1976, and were not inspected by any of them at that time. Approximately six weeks later, in May, 1976, the potatoes were cut into seed pieces for planting. During the cutting process, plaintiffs noticed that the potatoes were heavily infected with a fungal disease known as Tuber Rot, and they complained about this condition to defendant, but did not reject the seed. Existence of the Tuber Rot, which impedes or prevents germination of the seed pieces, was not apparent from examination of the potatoes' exterior. This disease is caused by a fungus known as Fusarium, which is commonly present in soil and is often found in a small percentage of seed potatoes. Potatoes may contract the infection either from the soil or by being stored in a cellar where the organism is present and which has not been sprayed with a disease inhibitor.

Despite their discovery of Tuber Rot, plaintiffs neither rejected nor revoked acceptance of the potatoes. *See generally,* ORS 72.6010 through 72.6080. Plaintiffs testified that their decision to retain and plant the seed potatoes was influenced by the advent of planting season and the scarcity of adequate replacement seed. Plaintiffs further testified that they slowed their cutting process in order to separate out the infected pieces, and that they thought they had succeeded in removing most of the disease; however, many of the seeds failed to germinate. Nothwithstanding that explanation of their acceptance of the seed, each of the plaintiffs did replant to some extent, and the cost of doing so, together with a claimed lower crop yield, comprise the damages they seek to recover.

Other growers who purchased seed from the same lot as plaintiffs testified that they obtained good results. However, each of these growers had dusted the seed pieces with a fungicide (KAPTAN) prior to planting. The evidence indicated that use of a fungicide is considered appropriate where Fusarium tuber rot is suspected. Another fungicide, Polyram, is also effective in controlling Fusarium, but there was evidence that it was no longer commercially available. Plaintiffs testified that their previous use of KAPTAN had caused itching, irritation, nausea and nosebleeds among those coming in contact with it. Therefore, they did not apply KAPTAN, electing instead to apply only gypsum, a drying agent, and manually winnow out the infected pieces before planting.

Before discussing the assignments of error, it is necessary to review the issues formed by the pleadings and the evidence, and addressed in the instructions. We are concerned here only with the issue of liability. The complaint relies solely on a breach of warranty, either express or implied. Defendant's answer simply denied both; no affirmative defenses were asserted. It is clear that there was no express warranty of freedom from the Fusarium tuber rot, so the only issue remaining is whether there was a breach of the implied warranty of merchantability. More pointedly, the issues boiled down to what constituted unmerchantability of potato seed, and whether the seed potatoes were unmerchantable at the time of delivery.

Defendant contended that there was no evidence that the seed potatoes contained rot at the time of delivery, but only that they contained rot after they were taken from the cellars. Defendant put on evidence that the infestation may develop in a storage cellar if it is not sprayed with a disinfectant or disease inhibitor prior to storage. Plaintiffs did not spray their cellars, and the Klamath County extension agent expressed the opinion that a farmer who uses seed not grown by him should spray prior to storage. The trial court instructed the jury, without objection, as follows:

"If you find by a preponderance of the evidence that the source of the Fusarium Tuber Rot cannot be determined or if you find that the infestation of the Fusarium Tuber Rot was a result of poor preventative farming practices on the

part of the plaintiffs as the sole cause of their loss, then you must find against the plaintiffs and in favor of the defendant."

Defendant also contended that Fusarium was a common organism, that discovery of its existence was difficult and therefore seed certification requirements do not include standards for the existence or non-existence of the rot, and that when it is discovered in significant quantity the accepted agricultural practice is to treat the seed with a fungicide before planting. Further, the essence of defendant's contention is that if, notwithstanding the existence of rot, the seed may be grown successfully through the use of that accepted practice, it passes in the trade as merchantable seed.[1] There was evidence to support this position, including evidence that five other farmers had purchased seed potatoes from the same lot involved here, observed rot, treated the seed pieces with a fungicide and produced healthy stands and good yields of potatoes.

Plaintiffs, on the other hand, contended that the potato seed contained a higher proportion of rot than was generally acceptable in the trade, and, although the evidence is not strong, there was a jury question presented as to what constituted merchantability in this context.

■ The two instructions to which plaintiffs assign error in their second assignment, although not models of

---

[1] ORS 72.3140 provides, in pertinent part:

"(1) Unless excluded or modified as provided in ORS 72.3160, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *

"(2) Goods to be merchantable must be at least such as:

"(a) Pass without objection in the trade under the contract description; and

"(b) In the case of fungible goods, are of fair average quality within the description; and

"(c) Are fit for the ordinary purposes for which such goods are used; and

"(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) Are adequately contained, packaged and labeled as the agreement may require; and

"(f) Conform to the promises or affirmations of fact made on the container or label if any."

clarity, appear to be an attempt to incorporate the parties' contentions into an instruction dealing with breach of warranty. The first instruction reads:

"Now, with regard to the implied warranty and in order to recover in an implied warranty, it is necessary that plaintiffs prove by a preponderance of evidence in each instance that there existed a contract of sale between the plaintiff and defendant, that the defendant seriously breached the implied warranty of merchantability by delivering goods to the plaintiff not meeting the standard of merchantability, and that the breach of that warranty by defendant was sole, direct and proximate cause of the damage to the plaintiffs in the extent of Fusarium Tuber Rot in the potato seed exceeds the merchantability standard when delivered to the plaintiff by defendant and to the extent that the failure of the seed to germinate and come up when planted due to the infestation of the seeds could not have been prevented by an appropriate preventive farming practice by the plaintiffs."

The first part of the instruction (to which plaintiffs did not object) assumes that seed potatoes may possess some degree of rot and still be merchantable—plaintiffs' contention. We construe the last portion of the instruction as incorporating defendant's theory of the case, albeit inartfully.

Plaintiffs argue here that the instruction required plaintiffs to prove that they could not mitigate their loss by the use of accepted agricultural practices. However, the trial court gave a separate instruction on mitigation, without saying whose burden it was to prove, and there was no exception to that instruction even though defendant had not pleaded a failure to mitigate or avoid damages. *See* ORS 72.7150(2)(a); *Hardwick v. Dravo Equipment Company,* 279 Or 619, 569 P2d 588 (1977).

The other instruction covered by this assignment is:

"Consequently, the plaintiffs must prove by a preponderance of the evidence that the loss complained of occurred as a direct and proximate result of the existence of an unmerchantable degree of Fusarium Tuber Rot infestation at the time of delivery of seed to plaintiffs by defendant, and that the loss due to infestation of seeds could not have been prevented by preventative farming practices."

Read literally, the instruction seems to say that even if the seed was unmerchantable, plaintiffs may not recover if they could have prevented the loss—in other words, they were required to mitigate. That would not be a correct statement of the law, because they would be entitled to damages for the breach of warranty at least to the extent of the difference in value of the seed as warranted and as delivered, together with incidental damages. ORS 72.7140(2), (3);[2] 72.7150(1).[3] But that was not plaintiffs' claim,[4] and we do not construe their exception to the two instructions as fairly raising the questions they now raise. The exception was:

"For the plaintiff, Your Honor, just basically two exceptions and actually they are about the same thing. I would except to the Court giving that portion of the instructions which reads as follows: 'Could not have been prevented by appropriate preventative farming practices by plaintiffs.'

"That was given as part of two different instructions requested by defendants.

"Our position would be it is beyond what the law is as far as what is required. Plaintiffs [contend] that their burden would be to establish that they used the product in this case, seed potatoes, in the normal manner that seed potatoes would be used and to instruct the jury in that

---

[2] ORS 72.7140 provides:

"(1) Where the buyer has accepted goods and given notification as provided in subsection (3) of ORS 72.6070 he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case any incidental and consequential damages under ORS 72.7150 may also be recovered."

[3] ORS 72.7150(1) provides:

"Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach."

[4] The trial court, however, instructed the jury, without objection, on that measure of damages.

manner would call for speculation as to what is appropriate preventative farming practices.

"What I think it was brought out in the trial that could be interpreted, one, by the Oregon State Professor who would say one thing [and] by an expert farmer of the Malin area could say something quite differently and I think it calls for speculation and could confuse the jury in that regard."

It is difficult to determine how the trial judge should have responded to that exception because the only part of it that is explicit is that the question of whether the plaintiffs used the seed potatoes "in the normal manner that seed potatoes would be used * * * would call for speculation as to what is appropriate farming practices." Counsel then pointed out the conflict in the evidence. That objection is not well taken—that question was an appropriate one for the jury. If anything, the exception, when viewed in the context of the question of what constituted unmerchantability, and in the context of the instructions as a whole, seems to present the fact question raised by the contentions of the parties with respect to merchantability.

When all is said and done, the fact is that if defendant's evidence as to what constitutes unmerchantability is believed, then in order for plaintiffs to prove, as they were required to do, that the seed was unmerchantable would require proof that they could not have obtained healthy stands and good yields of potatoes by employing "appropriate, preventive farming practices." In essence, that is what the jury was told. We cannot say that the apparent clumsiness[5] of the instructions to which objections were made, if error, was reversible error in light of other instructions to which there were no objections.[6]

[5] In fairness to the trial judge, it should be noted that counsel were not very helpful with respect to the instructions.

[6] For example, the jury was instructed:

"A person who suffered damages has a duty to exercise reasonable care, to avoid increasing that damage. There can be no recovery for such increased damage caused by the failure to exercise such care.

"Therefore, if you find by a preponderance of the evidence that the defendant breached the warranty and you find that upon discovery of that breach any of the plaintiffs took a course of action which increased the amount of the loss, then the plaintiff and each individual plaintiff would have no right to recover for resulting of additional damage."

■    Plaintiffs also assign error to the trial court's failure to give the following requested instruction:

"You are instructed that the absence of negligence by a Defendant in a Warranty case is not a defense. Therefore, in this case you need not determine that the Defendant was negligent before allowing a recovery to the Plaintiffs. You should concern yourselves only with whether there was a Warranty and if so whether the goods sold under that Warranty conformed thereto."

The concept of negligence was not involved in the pleadings or in the instructions, and was not relevant. The first two sentences of the instruction are correct statements of the law and it would not have been error for the trial court to have given them. The last sentence of the instruction, however, could have been misleading in that the question of causation had to be considered. At best, it is one of those instructions the giving of which is within the discretion of the trial court. We find no abuse of discretion here.

Affirmed.

**THORNTON, J.,** dissenting.

The majority simultaneously holds that the exception to the requested instructions is insufficient to preserve the question of the allocation of the burden of proof with respect to "appropriate preventative farming practices" and then decides the very issue it says is not preserved. I believe that the question is properly before us and that the instructions are inaccurate and misleading and constitute reversible error. Therefore, I dissent.

The majority notes that the exception is vague, and its lack of clarity appears to be exacerbated by poor reporting. The exception is as follows:

"For the plaintiff, Your Honor, just basically two exceptions and actually they are about the same thing. I would except to the Court giving that portion of the instructions which reads as follows: 'Could not have been prevented by appropriate preventive farming practices by plaintiffs.'

"That was given as part of two different instructions requested by defendants.

"Our position would be it is beyond what the law is as far as what is required. Plaintiffs [contend—sic] that their

burden would be to establish that they used the product[,] in this case, seed potatoes, in the normal manner that seed potatoes would be used[.] [T]o instruct the jury in that manner would call for speculation as to what is appropriate preventative farmer practices.

"What I think it [sic] brought out in the trial that could be inferred, one, by the Oregon State Professor who would say one thing [and] by [sic] an expert farmer of the Malin area could say something quite differently and I think it calls for speculation and could confuse the jury in that regard."

To this the court responded:

"You have your exception. You know, I considered that as we went over the instructions in chambers and I had some doubt and trepidation about it and ultimately decided that had to have some place in the trial of this case, so I gave the instruction on the subject by [way of—sic] breaking ground. So be it."

The question of what constitutes an appropriate farming practice would properly be for the jury and plaintiffs' exception on the ground that it requires the jury to speculate is erroneous, as the majority points out. Plaintiffs do not press this argument on appeal. Their sole contention is that the instructions incorrectly allocated to them the burden of proving that their loss could not have been prevented by application of a fungicide or other appropriate measure.

First, I believe the question is sufficiently preserved by the exception. It mentions specifically the excessiveness of the burden of proof placed on plaintiffs. Coupled with the trial court's response, which indicates that the matter had been discussed at some length in chambers and that the stated exception was a recap of objections made more fully at that point, I would give plaintiffs the benefit of the doubt.

The majority characterizes defendant's central argument as follows:

" * * * [T]he essence of defendant's contention is that if, notwithstanding the existence of rot, the seed may be grown successfully through the use of that accepted [preventative farming] practice, it passes in the trade as merchantable seed."

The majority opinion next examines the second instruction to which error is assigned—the causation instruction. It acknowledges that a literal reading of the instruction would seem to require plaintiffs to prove, in order to recover anything, that they could not have mitigated damages and that such a statement of the law is erroneous. It then seems to say that plaintiffs were not seeking damages for the difference in value of the potatoes as represented and as delivered. The complaints, however, alleged damages for the purchase price of seed.[1] If the seed is rotten, then it is worth nothing and the difference in value as warranted and as delivered equals the purchase price.

I am not persuaded that the majority's characterization of defendant's central contention with respect to the question of merchantability is correct.[2] Assuming it is, however, the instructions given were nevertheless insufficient to apprise the jury of that view and, by allocating to plaintiffs the task of showing there was no appropriate means available by which the lot of seed potatoes could be made to produce good results, they erroneously removed from the jury the right to decide what constituted "merchantability"—i.e., whether the goods in this case would "pass without objection in the trade." ORS 72.3140(2)(a).

As I understand it, plaintiffs' evidence, which the jury was free to believe, is as follows:  A small percentage of seed potatoes (perhaps as much as 5 percent) is ordinarily infected with tuber rot when delivered and the lot is not therefore unmerchantable. These potatoes are placed in a

---

[1] The complaints do not make clear whether this element of damages constitutes the cost of replacement seed or the reduced value of the original shipment or both. There was no motion by defendant to make this allegation more definite and certain. Plaintiffs requested an instruction, which was given, on the measure of damages for diminution of value at the time of delivery.

[2] The instructions objected to were those requested by defendant. The overview instruction quoted in its entirety by the majority requires that the breach of warranty cause the damage:

" * * * *in the extent* of Fusarium Tuber Rot in the potato seed *exceeds* the merchantability standard when delivered to the plaintiff by defendant and *to the extent* that the failure of the seed to germinate and come up when planted due to the infestation of the seeds could not have been prevented by an appropriate preventative farming practice by the plaintiffs."

This instruction assumes a "merchantability standard" independent of whatever farming practices exist to salvage infected seeds. It therefore allocates the burden to plaintiffs, as the majority concedes it seems to, to show they could not mitigate, i.e., there was *no extent* to which a fungicide could not have prevented their loss.

seed cellar for several weeks. It is possible that tuber rot may spread from the soil of cellars that are not sprayed beforehand with fungicide. If the jury were to conclude that the tuber rot in this case is the result of plaintiffs' failure to spray, then the defect is *caused* by plaintiffs. The jury was instructed without objection, as the majority notes, that in the event the jury so found, plaintiffs could recover nothing.[3] At the time of cutting the seed, plaintiffs stated they discovered approximately 20 to 25 percent tuber rot in the cut pieces and had to throw a substantial portion away. The purpose of the fungicide, as defendant's evidence shows, is to prevent the spread of tuber rot to the good portions and permit germination of the seed. There was no evidence that application of a fungicide to the rotted pieces would render them usable.

Plaintiffs and defendant agree that plaintiffs' burden to show the potatoes as delivered were unmerchantable requires proof of a defect—namely, that the percentage of tuber rot was beyond that which would normally be encountered. The jury could have concluded on plaintiffs' evidence that the mere presence of an inordinate amount of tuber rot was objectionable in the trade. Plaintiffs would be entitled to recover at least the value of that portion of the lot which had to be thrown away. The fact that plaintiffs did not revoke the lot does not prejudice their right to recover on breach of warranty; it only makes them liable for the purchase price. ORS 72.6070(2). To the extent plaintiffs used the remaining seed potatoes, which were likely to contain some tuber rot, without application of a fungicide which would have permitted germination, plaintiffs are not entitled to recover their consequential damages (reduced yields and costs of replanting). But that is a matter in mitigation which will not preclude recovery for the worthless portion of the lot and defendant, as the majority concedes, must shoulder the burden of proving that damages could have been mitigated.[4] *Hardwick v.*

[3] On appeal, we are not free to speculate whether this theory was the basis of the jury's conclusion.

[4] If defendant is contending that plaintiffs unreasonably used goods they knew to be unmerchantable, that again is a matter in mitigation as to which defendant has the burden and only cuts off consequential damages. ORS 72.7150(2)(a); *Karlen v. Butler Mfg. Co.,* 526 F2d 1373, 1379 (8th Cir 1975); *see Western Feed Co. v. Heidloff,* 230 Or 324, 338-41, 370 P2d 612 (1962) (applying the mitigation rule under the Uniform Sales Act, former ORS 75.010 et seq).

*Dravo Equipment Company,* 279 Or 619, 569 P2d 588 (1977).

As the majority makes out defendant's contention, plaintiffs would also have to show, as an adjunct of proving unmerchantability, that, in addition to containing a high degree of rot, there existed no way to render *the entire lot* usable, at least to the point that the average potato farmer would not object to the quality of the lot. In my view, in the absence of proof of a means of permitting the rotted pieces to be used, such a contention is dubious. More fundamentally, however, allocation to plaintiffs of the burden of proving the *nonexistence* of such a means denies plaintiffs the right to have the jury determine which standard of merchantability, defendant's or plaintiff's, is correct. The jury should have been instructed that, *if* it found that such a means existed, it *could* find that the goods were merchantable and plaintiffs could not recover unless they proved either (1) that the means they selected for using the balance of the lot (i.e., manual winnowing and application of gypsum) was appropriate;[5] (2) that failure to employ the available means of counteracting the rot (in this case, a fungicide) was otherwise justifiable; or (3) that the goods were nevertheless objectionable in the trade.

The instructions fall short of informing the jury even of the majority's version of defendant's contention with respect to what constitutes merchantable seed potatoes. That the majority must resort to "construction" to sort out the instructions is sufficient indication of that fact. The instruction given on merchantability merely recites the factors listed in the statute (ORS 72.3140(2))[6] and says

---

[5] Plaintiffs testified they obtained good results in prior years without use of a fungicide.

[6] ORS 72.3140(2):

"(2) Goods to be merchantable must be at least such as:

"(a) Pass without objection in the trade under the contract description; and

"(b) In the case of fungible goods, are of fair average quality within the description; and

"(c) Are fit for the ordinary purposes for which such goods are used; and

nothing about appropriate farming practices. This phrase is mentioned only in connection with causation. The jury twice requested reinstruction on the issue of implied warranty and debated into the wee hours of the morning before rendering its verdict. It is clear that the instructions were confusing.

For the foregoing reasons, I respectfully dissent.

---

"(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) Are adequately contained, packaged and labeled as the agreement may require; and

"(f) Conform to the promises or affirmations of fact made on the container or label if any.