Argued and submitted October 14, 1981, reversed in part;
affirmed in part May 3, 1982

VISTA ST. CLAIR, INC.,
*Respondent,*

*v.*

LANDRY'S COMMERCIAL FURNISHINGS, INC.,
*Appellant.*

(No. A7801-01026, CA 19959)

643 P2d 1378

Fred B. Miller, Portland, argued the cause for appellant. With him on the briefs was Brown, Hansen & Steenson, Portland.

Ferris F. Boothe, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

This is an action for breach of express and implied warranties arising out of the sale by defendant to plaintiff of carpeting for use in plaintiff's apartment building. The trial court, sitting without a jury, awarded plaintiff judgment for $2,500 in damages and $762.30 in prejudgment interest. On appeal, defendant contends that the trial court erred:

(1) in admitting evidence of the carpet's replacement cost;

(2) in denying defendant's motion to dismiss on the ground that plaintiff had failed to prove the carpet as furnished was worth less than it was warranted to be worth; and

(3) in awarding prejudgment interest.

We affirm the trial court's award of damages but reverse the award of prejudgment interest.

In the fall of 1975, defendant installed, on the third and seventh floors of plaintiff's Vista St. Clair apartment building, cut-pile acrylic carpeting for which plaintiff paid defendant $8,560. Plaintiff employed an interior designer to select the carpet and decorate the areas in which the carpet was installed.

Although initially the light brown coloring of the carpeting appeared to be uniform, within several months the carpeting began to "shade" and become discolored in many areas and, as Mr. McIver, plaintiff's president, testified, "looked like somebody had dropped muddy water on it and hadn't cleaned it up." The "shading" apparently resulted from the cut-pile tufts in the "shaded" areas having taken a permanent "set" different from that of the tufts in surrounding areas. Temporary shading caused by normal use was to be expected in carpets of this type but could be corrected by returning the tufts to a uniform "set." The permanent "set" exhibited by this carpet was not to be expected and probably resulted from a manufacturing defect.

Plaintiff notified defendant of the problems with the carpeting and requested that the discoloration be

corrected or that the carpeting be replaced. For approximately three and one-half years plaintiff continued to use the carpeting, during which time discussions continued between plaintiff and defendant concerning the reasons for the discoloration and possible remedies, including replacement. In January, 1978, when it became evident that the problem could not be cured and that defendant would not replace the carpeting, plaintiff filed this action. In May, 1979, before the trial in this case, plaintiff had the carpet replaced at a cost of $10,885.

## RELEVANCE OF THE EVIDENCE
## OF REPLACEMENT COST

■ Defendant first assigns error to the trial court's admission of evidence concerning the cost to plaintiff of replacing the carpet. When a buyer has accepted goods and alleges breach of warranty with respect to those goods, as plaintiff did in this case,[1] the damages resulting from such a breach may be "determined in any manner which is reasonable." ORS 72.7140(1).[2] Ordinarily under such circumstances, to determine plaintiff's loss it would be necessary to find the difference, if any, between the value of the carpet as accepted and installed and the value the carpet would have had if it had been as warranted. ORS 72.7140(2), n 2, *supra. See State ex rel Hawkins v. Travelers Co.,* 250 Or 356, 358, 442 P2d 612 (1968); *McVay v. Deschutes Valley Potato Co.,* 49 Or App 629, 635, 620 P2d 930 (1980). The burden is on the plaintiff to prove damages. *See State ex rel Hawkins Co. v. Travelers, supra. See also, Fargo Machine 9 tool Company v. Kearney & Trecker Corp.,* 428 F Supp 364, 382 (ED Mich 1977); 2 Anderson, Uniform Commercial Code, § 2-714:8 (2d ed 1971). *See generally, Wagner Tractor, Inc. v. Shields,* 381 F2d 444 (9th Cir 1967).

---

[1] On appeal, plaintiff does not deny that it *affirmed* the contract and, therefore, its damages, if any, are to be determined under ORS 72.7140, *supra,* n 2. Thus, this is not a case in which plaintiff has elected to *cancel* the contract by revoking his acceptance, in which case plaintiff would have been required to seek relief under another statute.

[2] ORS 72.7140 provides:

"(1) Where the buyer has accepted goods and given notification as provided in ORS 72.6070(3) he may recover as damages for *any nonconformity* of tender the loss resulting in the ordinary course of events from the seller's breach *as determined in any manner which is reasonable.*

■■  Defendant in this case contends that evidence of *replacement cost* is irrelevant to establishing the loss to plaintiff under ORS 72.7140(2). We disagree. A useful objective measure of the difference in value "as is" and value as warranted is the cost of repair or replacement. White and Summers, Uniform Commercial Code, § 10-2 at 377 (2d ed 1980). *Tarter v. MonArk Boat Co.*, 430 F Supp 1290 (ED Mo 1977, *aff'd* 574 F2d 984 (8th Cir 1978). *See also, Wagner Tractor, Inc. v. Shields, supra; Western Feed Company v. Heidloff,* 230 Or 324, 334-38, 370 P2d 612 (1962). (both decided under Uniform Sales Act but applying a measure of damages substantially the same as that provided in ORS 72.7140(2)). In some cases, the cost of repair may equal the cost of replacing the entire item. *See Giant Food, Inc. v. Jack I. Bender, Etc.,* 399 A2d 1293 (DC App 1979); *Cox Motor Car Company v. Castle,* 402 SW2d 429 (Ky App 1966).

It may well be that, as defendant appears to be arguing, before proof of replacement cost as the measure of damages under ORS 72.7140(2) may be offered, there must be a showing of "special circumstances." Assuming, without deciding that this is so, we hold that the long delay occasioned by the parties' negotiations, which negotiations concerned replacing the carpet, was such a circumstance. If prompt replacement had occurred, the cost to defendant would presumably have been the same as the original cost of the carpet. The trial court did not err in allowing plaintiff to submit evidence of replacement cost as one method of assessing defendant's damages.

Defendant relies upon *Sol-O-Lite Laminating Corp. v. Allen,* 223 Or 80, 353 P2d 843 (1960), but that case is not dispositive here. There, seller challenged the sufficiency of buyer's cross-complaint to state a cause of action for breach of warranty. Defendant, *inter alia,* claimed an amount "for

---

"(2) *The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.*

"(3) In a proper case any incidental and consequential damages under ORS 72.7150 may also be recovered." (Emphasis supplied.)

damages accruing in connection with the replacement of 59 rolls of defective merchandise." The court stated:

"This is not an allegation of any compensable damage, as the measure of general damages, which is apparently what defendant is attempting to allege, is the difference between the value of the goods actually received and the value they would have had if they were as warranted. [Citations omitted.] *The replacement value is beside the point and irrelevant."* 223 Or at 90. (Emphasis supplied.)

The quoted holding does not determine the issue here for the following reasons: (1) the defendant in this case challenges the relevance of the *evidence* to prove damages at trial rather than the sufficiency of an *allegation* to state a cause of action; (2) *Sol-O-Lite Laminating Corp. v. Allen, supra,* was decided under the Uniform Sales Act and prior to the enactment of ORS 72.7140, which although incorporating the measure of damages set out in *Sol-O-Lite Laminating Corp. v. Allen,* also provides that a buyer's loss may be "* * * determined in any manner which is reasonable" (ORS 72.7140(1)) and that the difference-in-value approach is the measure of damages "* * * unless special circumstances show proximate damages of a different amount," (ORS 72.7140(2)),[3]; and (3) both the decision in *Wagner Tractor, Inc. v. Shields, supra,* decided after *Sol-O-Lite Laminating Corp.v. Allen, supra,* and applying the same measure of damages applied in that case, and the commentary in White and Summers, *supra* explaining UCC § 2-714(2), approve of the method of using the cost of repair or replacement to determine the difference in the value of goods as received and their value as warranted.

### EVIDENCE OF DIFFERENCE IN VALUE OF CARPET AS RECEIVED AND AS WARRANTED

Next, defendant contends that, because plaintiff failed to prove that the carpet as furnished was worth less

---

[3] Comment 3, UCC § 2-714 (1978), states:

"Subsection (2) [ORS 72.7140(2)] describes the usual standard and reasonable method of ascertaining damages in the case of breach of warranty but it is not intended as an exclusive measure. * * *"

Furthermore, ORS 71.1060(1) provides:

"The remedies provided by the Uniform Commercial Code shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed * * *."

than as warranted, the trial court should have granted defendant's motion to dismiss. We disagree. The purchase price of the allegedly defective carpeting was $8,560, which included installation costs. That was evidence of the warranted value of the carpeting. The real question is the carpeting's *actual* value. As stated in White and Summers, *supra,* at 381:

"When repair or replacement is not possible, determining the value of defective goods *as accepted* may be more difficult than ascertaining the value as warranted. Several courts have used the price received on a prompt resale as the appropriate measure. Others have accepted the appraisal testimony of expert witnesses as evidence of actual market value at the time of acceptance. *In a few cases, courts have found (or allowed the jury to find) that the value of accepted goods was zero and permitted the buyer to recover the purchase price.*" [4] (Emphasis supplied.)

Plaintiff's testimony as to the carpeting's actual value came from its president, who testified at the trial:

"Q.  Okay, at that point — and let's use it the farthest point, about nine months after installation, what was the value of that carpeting to the Vista St. Clair?

"A.  *Zero.*

"Q.  Why is that?

"A.  It was very unsightly. It was totally different than [sic] other floors. It looked like it had large spills of liquid on it that had flowed out, they were in a water pattern. It looked like somebody had dropped muddy water on it and hadn't cleaned it up. It seemed to get worse as time went on. That was totally out of the character of a first class apartment building.

"Q.  Now, and what conclusion did you reach eventually with regard to that carpet?

"A.  It should be removed and replaced."[5] (Emphasis supplied.)

---

[4] For cases holding that defective goods had no value as accepted, thus justifying recovery of the purchase price, *see Swenson v. Chevron Chemical Company,* 89 SD 497, 234 NW2d 38 (1975) (insecticide); *W & W Livestock Enterprises, Inc. v. Dennler,* 179 NW2d 484 (Iowa 1970) (diseased pigs). *Compare Giant Food, Inc. v. Jack I. Bender, Etc., supra,* (replacement of entire carpeting); *Cox Motor Car Company v. Castle, supra,* (truck held to be "one big defective part").

[5] Defendant does not challenge McIver's competence to offer an opinion as to the value of the carpet, nor did defendant object to the testimony at trial on those

Defendant contends that McIver's assertion that the carpet, as installed, had a value of "zero" was not sufficient to establish that there was a difference between the value of the carpet as accepted and its value as warranted so as to support the trial court's award of damages to plaintiff in the amount of $2,500. Defendant claims such a valuation is not "believable" testimony and, therefore, must be disregarded, essentially for the following reasons: (1) plaintiff used the carpet for some three and one-half years following the discovery of the defects with no loss of rents; and (2) "a fully serviceable carpet * * * defective only in appearance is obviously worth more than zero * * *," *i.e.*, "[R]easonable minds simply cannot conclude that the appearance of this six-month old carpet was such as to render its value zero."

As we view the case, this assignment is abstract. The trier of fact did not, in fact, find the value of the installed carpet to be "zero." He awarded damages of $2,500. The evidence of the use to which it was put by plaintiff, both before and after defects were discovered, permitted such a finding. We decline to look behind it. *See Christian Retreat Center v. Comm. for Wash. Co.,* 28 Or App 673, 679, 560 P2d 1100 (1977).

## PREJUDGMENT INTEREST

■ Plaintiff's complaint contains no prayer for prejudgment interest; neither was the amount in controversy liquidated or otherwise certain prior to trial. Defendant therefore argues that the trial court erred in awarding plaintiff prejudgment interest of $762.30. We agree.

> "In an action at law, a party must plead specifically a foundation for prejudgment interest on monies due. *Lithia Lumber Co. v. Lamb,* 250 Or 444, 443 P2d 647 (1968)." *Gardner v. Meiling,* 280 Or 665, 676, 572 P2d 1012 (1977).

Applying this principle, the court in *Gardner* found that defendants in that case were not entitled to prejudgment

---

grounds. In any event it would appear that, because of his familiarity with the carpet in question and his experience with such purchases generally, McIver was competent to give an opinion as to the value of the carpeting. *See State v. Crace,* 26 Or App 927, 931-32, 554 P2d 628 (1976). *See also, Levene et ux v. City of Salem,* 191 Or 182, 200-01, 229 P2d 255 (1951).

interest on an award for $4,000 where defendants had not included a prayer for such interest in their counterclaim but had "* * * merely asked for judgment of $4,000." In *Carlson v. Blumenstein,* 54 Or App 380, 635 P2d 380 (1981), we reached a similar result in a case in which plaintiff's claim did not include a prayer for prejudgment interest on an amount claimed for defects in a house. Here, plaintiff's "second amended complaint" contained no prayer for prejudgment interest.

That portion of the judgment awarding plaintiff prejudgment interest in the amount of $762.30 is reversed. In all other respects, the judgment is affirmed.