Filed 12/7/21  Kyundibekyan v. Reese CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).   This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| KARAPET KYUNDIBEKYAN et al., | B302665 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC633974) |
| v. | |
| ROSHANN REESE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven Kleifield, Judge.  Affirmed.

Anderson & Associates, Michael D. Anderson and Andrei V. Serpik for Plaintiffs and Appellants.

Law Office of Stewart J. Neuville and Stewart J. Neuville for Defendants and Respondents.

This case arises from a failed sale of the assets of Advanced Business Conglomerate, Inc. (ABC) to brothers Karapet and Vardan Kyundibekyan (appellants). ABC is a small corporation which provided home health care services under the name Benevolent Home Care. After signing a purchase agreement, making a down payment, and attempting to run the business for the month of August 2016, appellants gave notice of rescission and demanded their down payment be returned. Roshann Reese, the sole shareholder of ABC, declined to return the down payment. Appellants sued ABC, Reese, and her son Shawn Phillips (respondents) for negligent and fraudulent misrepresentation and breach of oral and written contract. ABC and Reese filed a cross-complaint alleging breach of contract, negligence, fraud and deceit, and slander.

Both actions were tried by the court, which explained in its statement of decision that the sale/purchase agreement was void for indefiniteness. Relying on equitable principles of restitution, the court found appellants were not entitled to the return of the down payment. The court found appellants were entitled to "the $12,705.12 that was billed for the month of August" to Medicare/Medical on appellants' behalf. The court stated: "Defendants are unjustly enriched by retaining those funds, which should be paid to Plaintiffs" and found "against the Defendants for failure to turn over monies received for billing for services rendered by Plaintiffs in the sum of $12,705.12." In the final judgment, however, the court only found against ABC for the $12,705.12.

Appellants appeal, contending the trial court abused its discretion in failing to order the return of the down payment and failing to find Reese and Phillips personally liable for the

2

payment of the billed funds.  Respondents contend the record is inadequate to permit meaningful appellate review, and the appeal should be denied on that ground alone.  We find the record adequate to address appellants' claim about the return of the down payment, but find no abuse of discretion or error in the trial court's decision to deny return.  We find no error on the face of the record concerning the trial court's decision to hold only ABC liable for the $12,705.12 in billed services for August.  Accordingly, we affirm the judgment.

## BACKGROUND

Following a five-day court trial, the court issued its written statement of decision in this matter.  The trial court's statement contains a summary of the evidence offered at trial; it is the only record of much of that evidence.  Although the court trial of this matter involved 10 witnesses, appellants provided a reporter's transcript of the testimony of Reese and Phillips only, a clerk's transcript, and a joint appendix of recreated trial exhibits.  We rely on the trial court's statement for much of the background details of this appeal.

As the trial court in this case aptly summarized in its written statement of decision: "This case boils down to an attempted sale of a marginally profitable business by a seller who was eager to sell, to an unsophisticated buyer who did not exercise due diligence; and a failure to agree on a material term of the agreement, i.e. the extent of the cooperation and assistance by the seller that would be contractually required to transition ownership."

This case has its origins in early 2016, when appellants learned that Reese wanted to sell ABC. She planned to attend medical school. Reese's son Phillips ran the finances for the company.

In June 2016, appellants made a $5,000 down payment and were shown some financial documents for ABC. Thereafter, on July 29, 2016, the parties signed a written agreement pursuant to which appellants would purchase ABC by making a series of payments totaling $330,000. As structured in the agreement, appellants would make a down payment of $50,000 upon signing the agreement, and would pay $8,000 a month beginning in September 2016. In February 2017, assuming certain conditions were met, appellants would make a second $50,000 payment and the sale would "close." Appellants would receive financial control of ABC. Although the parties initially discussed a sale of ABC's shares to appellants, ultimately the transaction was the sale of ABC's "two provider numbers that allowed one to provide home health care and bill Medicare and Medi-Cal for their services." Appellants were also purchasing the right to use the name "Benevolent Home Care."

Appellants received operational control of ABC on August 1, 2016, and attempted to run the business for the month of August. At the end of the month, they gave notice they were rescinding the contract due to respondents' "fraudulent misrepresentation of the potential liabilities and financial status" of ABC. ~(CT 205, 599)~

Appellants subsequently contended they were not informed of fraudulent billing practices, non-compliance with Medicare and Medicaid rules and labor law, and pre-existing tax liabilities. They also claimed respondents had not cooperated in assisting

4

appellants' transition into ownership.  Respondents cross-complained for breach of contract.

The trial court held a five-day court trial involving 10 witnesses.  The court found that "the contract was extremely poorly written, especially with respect to the seller's obligations.  While the buyers' obligations are fairly well spelled out, the seller's obligations are not.  This omission was the primary reason [appellants] gave notice of rescission after only one month of attempting to run the business."

The court found: "As illustrated by the facts in this case, a transition period is necessary to acclimate the buyers to the business, so they can run it profitably.  The parties would need to work together cooperatively to obtain the transfer of the provider numbers."  The court also found that "the Seller's obligations were only vaguely, and inadequately defined."  Appellants also "entered into oral agreements only with Reese and Phillips for assistance; the duties were never entirely clear."  Phillips, however, had moved to Arkansas in June for another opportunity and was "largely unavailable."  Reese was "largely unavailable as well; she was in the process of leaving the country for medical school."

When appellants had contact with ABC's employees, they encountered a litany of complaints:  bounced checks, unpaid overtime, a shortage of nurses, and a lack of training.  "These were all things for which [appellants] needed assistance; however, the assistance was rarely there.  The transition was a disaster."

The court concluded the contract was "not 'sufficiently definite'" to be enforceable.  Cooperation and assistance by the seller was an indispensable material term that was not

5

adequately addressed in the written contract. "It is not possible to 'fill in the gaps' in this contract to determine whether either side committed a breach."

The court did not place the blame for this solely on either party. The court found appellants fell short in their "due diligence" in purchasing a business: "The evidence showed that consultants are available for hire to assist in valuing home health care businesses, and assisting in making decisions regarding whether and on what terms to purchase a home health care business. Indeed, Plaintiffs hired such a consultant . . . after they became concerned about what they had just purchased, as opposed to before they made the purchase. . . . Plaintiffs were surprised about many aspects of the business which they would have known had they hired a consultant."

The court expressly rejected appellants' claim that respondents committed fraud. The court specifically addressed appellants' claim that they were defrauded by not being made aware of approximately $170,000 in tax liabilities. The court found their claim "rings hollow." The court also found "not convincing" appellants' claim that they were confused by references to payments to the IRS for a trust fund penalty.

After reiterating that the contract was not "sufficiently definite" to be enforceable and so "neither side has any obligations to the other under the contract," the court turned to the question of the $50,000 down payment. The court stated: "The Court is of the view that at the time the parties entered into the contract, all parties believed that they would ultimately succeed. It was only after the first month that it became clear that they would not. Due to their lack of due diligence, Plaintiffs decided to take over the operations of the business without

6

knowing exactly what they were getting into, and assumed the risk of failure."

Responding to a request by appellants after the tentative ruling, the court addressed $12,705.12 billed for the month of August on appellants' behalf, and determined that appellants were entitled to the monies. "Defendants are unjustly enriched by retaining those funds, which should be paid to Plaintiffs."

The court found no breach of contract by any party, and awarded no damages for breach of contract.

Respondents objected to the statement of decision, contending that they had used the $12,705.12 to pay expenses incurred by ABC during the time appellants had operational control, and so were not unjustly enriched. Appellants replied that respondents were relying on evidence which was not presented at trial and so should not be considered by the court. The court agreed. Reese and Phillips then objected that they should not be liable for payment of the $12,705.12 to appellants, as they did not receive or retain any of the funds and so were not enriched. The trial court apparently agreed with this claim, as the final judgment is against ABC only.

## DISCUSSION

A. *The Record Is Adequate to Permit Review of Appellants' Down Payment Claim But Not Their Claim Concerning Billing Payments*

Respondents contend the appeal should fail because appellant has not provided an adequate record. There was no court reporter for, and hence no reporter's transcript of, the testimony of appellants or six other witnesses. The reporter's transcripts cover the testimony of Reese and Phillips only.

7

"The party challenging a lower court judgment has the affirmative obligation to provide an adequate record. In the absence of such a record, the judgment must be affirmed." (*Hersey v. Vopava* (2019) 38 Cal.App.5th 792, 798.) "We cannot presume the trial court has erred. . . . ' "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent. . . ." [Citation.]' " (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447.)

Appellants acknowledge the record does not contain reporter's transcripts of most of the trial testimony, including their own testimony. They contend this appeal "presents questions which all rest on the undisputed facts found by the Trial Court. Appellants do not assert that the Trial Court should have found different facts." They further claim that the "findings of facts . . . are not being challenged." Thus, they claim a complete record of the trial proceedings are not necessary. (See *Chodos v. Cole* (2012) 210 Cal.App.4th 692.)

We agree the record is adequate to permit a review of the trial court's decision to deny appellants' request for the return of the first down payment, that is, to review the trial court's application of the law to the undisputed facts. We note, however, that appellants' claim that they are not "challenging" the findings of facts is somewhat disingenuous. They frequently avoid "challenging" the court's findings by mischaracterizing or ignoring them. While we do not correct every instance of mischaracterization or avoidance, we note that appellants' repeated descriptions of respondents' "bad faith" are completely inconsistent with the trial court's statement of decision, as are their descriptions of themselves as victims. Appellants made

8

numerous claims of wrongdoing by respondents, and all were rejected by the trial court. The court found respondents "had an incentive to see that [appellants] were successful" and "had little interest in deceiving." The court found appellants "were not entirely blameless" in the failure of the transaction because they did not adequately investigate what assistance they would need to transition to successful ownership. The court also found appellants untruthful, a finding it did not make about respondents.

The trial court did not make any findings of fact concerning its decision to hold only ABC responsible for turning over the $12,705.12 in billing payments. Appellants contend Reese and Phillips will be unjustly enriched if they are not held responsible for turning over the money, which presents a factual question.

Appellants contend that error appears on the face of the record, and so we must presume the record includes all matters necessary to decide the appeal. We find an alternate phrasing more useful: Unless an error appears on the face of the record, an appellant's " '[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' " (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) We apply this standard to the court's decision to hold only ABC liable for the turnover of the $12,705.12 billing proceeds.

B. *It Is Not Unjust to Permit Respondents to Retain the First Down Payment*

The trial court found appellants were not entitled to a return of their down payment because "[d]ue to their lack of due diligence, [they] decided to take over the operations of the

9

business without knowing exactly what they were getting into, and assumed the risk of failure."

Appellants contend the trial court abused its discretion in denying the return of the down payment because respondents would be unjustly enriched by its retention. Appellants further contend the trial court erred in finding they had assumed the risk of failure.

Appellants contend that when "consideration . . . has failed" the law implies a promise on the part of the payee to return money paid as a consideration. (*Green v. Antoine* (1955) 133 Cal.App.2d 269, 274.) This is a principle that applies when a valid contract exists, but one or both parties do not perform under the contract. It is generally applicable when a contract is rescinded or a party seeks rescission.

This is not a rescission case. The court's finding that no contract existed precludes rescission. "Only a valid and binding contract may be rescinded. 'Loosely the term "rescission" has been employed in a wide and generic sense. But it is not properly applicable to the undoing of anything except that which has been the subject of mutual agreement. . . . Again, before there can be any "rescission," properly so called, there must be a contract completely formed and in force, or at least provisionally binding on the parties.' [Citation.] If the facts establish the nonexistence of the alleged contract sought to be rescinded, in that there was no meeting of minds, there can, of course, be no rescission." (*Charles Brown & Sons v. White Lunch Co.* (1928) 92 Cal.App. 457, 461–462.)

General principles of restitution apply in the absence of a valid contract. (See *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388.) "Under the law of restitution, '[a]n individual is

required to make restitution if he or she is unjustly enriched at the expense of another. [Citations.] A person is enriched if the person receives a benefit at another's expense. [Citation.]' [Citation.] However, '[t]he fact that one person benefits [from] another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it. [Citation.]' [Citations.]" (*Id.* at p. 389.)

We review a trial court's decision to grant or deny an equitable award based on unjust enrichment principles for an abuse of discretion. " ' "[O]ne of the essential attributes of abuse of discretion is that it must clearly appear to effect injustice." ' " (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815.) " ' "The burden is on the party complaining to establish an abuse of discretion." ' " (*Ibid.*) "Abuse of discretion is a deferential standard of review. [Citation.] Under this standard, a trial court's ruling 'will be sustained on review unless it falls outside the bounds of reason.' [Citation.] We could therefore disagree with the trial court's conclusion, but if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881–882.)

Here, the evidence establishes that a home health care business is a complex business with a myriad of regulatory requirements, and that appellants were aware of this. As the trial court noted: "It seems clear that Plaintiffs were purchasing the two Provider numbers that allowed one to provide home health care and bill Medicare and Medi-Cal for their services."

"An application process was necessary to obtain permission from the agencies to transfer the provider numbers to Plaintiffs."

Although appellants were unsophisticated buyers, it is undisputed they did not avail themselves of a consultant before taking over the operations of a business about which they knew little. As the court concluded: "Plaintiffs were surprised about many aspects of the business which they would have known had they hired a consultant." Further, according to one such consultant who assist buyers, "the extent of the assistance to be required of the sellers is typically spelled out in a contract." While these specific comments by the court are related to the lack of detail in the written agreement, they are equally applicable to appellants' failure to investigate what skills or knowledge they needed to run the business before they took over control of it from Reese in August.

When Reese received about $50,000 from appellants, she turned over the day-to-day operation of her business to appellants in exchange for that payment. The trial court described the period during which appellants had control of the business as "a disaster" due to appellants' inability to run the business without assistance. Reese testified that when she received operational control of the business back from appellants, she decided to end the business because she had "no idea what they did during the 30 days that they had possession of the business." In the absence of a valid sale contract, Reese retained

responsibility to Medicare and Medi-Cal for the business.[1] Further, as the court noted in its statement of decision, Reese wanted a quick sale of the business as she was planning to start medical school in the Caribbean in the fall of 2016. The ship had sailed on that goal.

We see no abuse of discretion in the trial court's decision that, as between the two parties, it was not unjust to permit Reese to keep the down payment. The court, as required, "consider[ed] the material facts affecting the equities between the parties." (See *Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 447.) Although appellants were not sophisticated in the home health care business, they elected not to hire a consultant who could have helped them evaluate Reese's business and determine what would be involved in running it themselves. Appellants quickly located a consultant after they took control of operations, indicating that they had the ability to find and hire such a consultant before the turn-over, but apparently chose not to do so. The trial court found Reese was largely unavailable to help appellants because "she was in the process of leaving the country for medical school (which explains why she was in a hurry to sell the company)." Reese's position was altered by appellant's inability to run the business: she

---

[1]     To be clear, the trial court did not find that appellants destroyed or materially damaged Reese's business during the month of August. At the same time, the trial court's description of the transition period as a "disaster" makes it clear that the business was, at a minimum, disrupted during this period. Similarly, Reese's statement that she decided to close the business shows that there were significant obstacles to her resuming control of the business.

faced difficulties and uncertainties if she resumed operating the business and she had lost valuable time if she decided to try to find another buyer.

In addition to considering the relative circumstances of the parties, "[d]etermining whether it is unjust for a person to retain a benefit may involve policy considerations. For example, if a person receives a benefit because of another's mistake, policy may dictate that the person making the mistake assume the risk of the error." (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1663.) For example, when a payment has been made based upon a mistake of fact by the payor, the payor generally is not entitled to restitution if "the payee has, in reliance on the payment, materially changed its position." (*City of Hope Nat. Medical Center v. Superior Court* (1992) 8 Cal.App.4th 633, 636–637.) This is particularly the case if " 'it is impossible or impractical to restore [the payee] to his original position.' " (*First Nationwide,* at p. 1663.)

Although we would not characterize appellants' failure to investigate the business as a mistake of fact, the mistake example provides a useful analogy. Appellants made a down payment to Reese in order to take over the operations of a complicated business which they had not made sufficient efforts to understand. In effect, they mistakenly believed they could run the business. Reese altered her position in reliance on the down payment by giving appellants operational control of her business and ceasing her attempts to sell it. Appellants' attempt to run the business was a disaster, and Reese could not be restored to her original position. Thus, it is sound policy to place the risk of loss of the down payment on appellants, or, in other words, to require them to assume the risk of loss.

Appellants object to the trial court's focus on their failure to hire a consultant, contending that "relief related to rescission" is not precluded on the grounds of negligence of the rescinding party unless it rises to the level of neglect of a legal duty. Appellants then speculate that it "appears" the court believed appellants "breached a duty to insure that the Agreement was properly drafted, which included a duty to hire an expert." They contend there is no evidence to support placing the risk of a defective contract on them, particularly because the trial court found that Reese drafted the contract.

Again, discussions of legal principles related to rescission are not helpful, as rescission is premised on the existence of a valid and binding contract. Equally importantly, appellants' argument ignores the plain language the court used in its statement of decision. The trial court used the phrase "take over operations of the business" and that phrase has a clear meaning. It does not mean to draft a written agreement. The court found that appellants took over operations of the business "without knowing what they were getting into." In this context of the statement of decision, this phrase means without understanding what was involved in operating the business. It does not mean defectively drafting an agreement.

C.    *There Is No Error on the Face of the Record as to the Trial Court's Decision to Hold Only ABC Responsible for Turning Over the $12,705.12 in Billing Payments.*

Respondents objected to the trial court's finding that they were unjustly enriched by retaining the $12,705.12. After the trial court ruled it would not consider evidence of payments made on behalf of ABC which were not in evidence at trial, respondents offered to show no funds were retained and filed an additional

15

objection focusing on the personal liability of Reese and Phillips. Following that filing, the court changed its decision to award damages against ABC only. We see no error on the face of the record in that ruling.

As respondents pointed out in their objections, there is no evidence in the record that Phillips or Reese personally received or retained any funds from ABC after August 1, 2016, and so no evidence that they were personally enriched. Thus, there was no error in the trial court's decision not to hold them responsible for turning over the monies.

Appellants implicitly acknowledge there is no such direct evidence, but contend that we must infer that Phillips and Reese took the money from ABC's bank account because they "willfully" refused to produce bank records. As appellants acknowledge, Reese offered innocent explanations for the lack of documentation, including losing printed copies and no longer having access to the electronic bank records of ABC. Appellants have not provided any record citation to show the trial court was asked to or did find that respondents "willfully" refused to produce documents or "suppressed" evidence. Accordingly, they have forfeited this claim. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156 [when a party fails to support an argument with the necessary citations to the record, the argument is deemed waived.].)

Appellants contend another reason supports holding Reese responsible: the assumption of liability she made in connection with the dissolution of ABC. We see no error on the face of the record in the trial court's implied finding that appellants had failed to show that Reese's assumption of liability applied to the $12,705.12 award.

Corporations Code section 1905 requires that a certificate of dissolution shall state that the corporation's "*known* debts and liabilities have been actually paid, or adequately provided for, or paid or adequately provided for as far as its assets permitted, or that it has incurred no known debts or liabilities, as the case may be." (Corp. Code, § 1905, subd. (a)(2), italics added.)[2] "[A] claim that has not yet arisen is not a known debt or obligation for which the officers of a corporation undergoing dissolution must provide." (*Peñasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1191, superseded by Corp. Code, § 2011 on another ground.)

The certificate of dissolution for ABC was an exhibit at trial. The face of the documents shows Reese checked a pre-printed box stating: "The corporation's known debts and liabilities have been adequately provided for by their assumption, and the name and address of the assumer is ___." Reese listed herself as the assumer.

---

[2] The remainder of the subdivision provides: "If there are *known* debts or liabilities for payment of which adequate provision has been made, the certificate shall state what provision has been made, setting forth the name and address of the corporation, person or governmental agency that has assumed or guaranteed the payment, or the name and address of the depositary with which deposit has been made or any other information that may be necessary to enable the creditor or other person to whom payment is to be made to appear and claim payment of the debt or liability." (Corp. Code, § 1905, subd. (a)(2), italics added.)

The record shows appellants served their notice of rescission and demand letter on September 1, 2016. Reese signed and mailed the certificate of dissolution on September 9, 2016. Appellants filed their complaint in this action on September 15, 2016.

The notice of rescission demanded the "return of [appellants'] advance payment and expenses" in the amount of $60,000. Appellants did not explain how they had arrived at this amount, and on appeal they simply refer to the letter as demanding a return of their down payment.[3] The record shows appellants were aware when they sent their rescission notice that Phillips had billed Medicare for services on their behalf in August, but that letter contains no demand that such monies be turned over to appellants when received by ABC. Appellants did make such claim two weeks later in their complaint, alleging that they were entitled to the return of "the $55,570 they paid for the Business and billing services, as well as the monies received for home care services after August 01, 2016." Thus, on the record before us, the turnover of $12,705.12 in billed payments was not a known liability when Reese completed the certificate of dissolution.

---

[3] The down payment itself totaled $50,000, and appellants have identified an additional $4,070 in payments to Reese and Phillips for rent, IRS liabilities, consulting services, and billing services for a total of $54, 070. Although appellants use the $54,070 amount on appeal they allege in their complaint that the amount they paid to respondents was $55,570.

Appellants further contend Reese had "an obligation to discover and provide for potential liabilities even if unknown or contingent," prior to filing the Certificate of Dissolution. The issue whether Reese failed to satisfy her obligations when dissolving ABC and whether such a failure rendered her personally liable for any unknown liabilities of ABC is far beyond the scope of the trial of this matter, and we do not consider it on appeal.[4]

---

[4] We recognize appellants contend the trial court removed Reese from the judgment without giving them an opportunity to respond to the removal, but appellants were clearly aware before the trial court issued its tentative ruling that Reese would not ordinarily be liable for ABC's liabilities. They noted in their closing trial brief that Reese had assumed "all of ABC, Inc's liabilities" in the certificate of dissolution. This was inaccurate, and served to obscure the very issue which appellants now belatedly wish to have decided: whether the billing payments represented a "known" liability for ABC.

## DISPOSITION

The judgement is affirmed.  Respondents are awarded costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, Acting P. J.

We concur:


WILEY. J.


OHTA, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.